Commonwealth *v.* American Gas Company,
Appellant.

Argued Jan. 4, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Arthur H. Hull,* with him *Geo. Ross Hull, William H. Wood* and *Hull, Leiby & Metzger,* for appellant.

*B. B. Bastian,* Deputy Attorney General, with him *James H. Duff,* Attorney General, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, April 9, 1945:

This case challenges again the constitutionality of the Franchise Tax Act (Act of June 1, 1889, P. L. 420, as amended by the Act of May 16, 1935, P. L. 184, 72 PS section 1871) as applied to this foreign corporation.

Appellant is a corporation chartered as a public utility and holding company under the laws of New Jersey. This appeal is from the resettlement of its franchise tax for the year 1935 and from the decision of the court below sustaining, in part, the taxing authorities. The corporation is authorized to transact in this Commonwealth "the business of ownership of public utilities and securities of other corporations." It is a subsidiary of the United Gas Improvement Company. During the year 1935, it maintained an office in Pennsylvania, kept in this state bank accounts, records and securities, received and distributed dividends and in general conducted the business of a holding company. It owned stock in twenty-four corporations, including two domestic corporations. In the original tax settle-

ment, the taxing authorities used in the tangible property allocating fraction the value of real estate owned by the corporation in Philadelphia which was its only tangible property. In the wage and salary allocating fraction, the Commonwealth used as numerator and denominator the figure of $5000, representing the "management fee" paid to the United Gas Improvement Company for supplying five officers to appellant corporation at stated yearly compensations. The Commonwealth also assigned to Pennsylvania all of the gross receipts of the corporation.

The court below ruled that the tangible property of the corporation was not used in its holding company business and, therefore, properly excluded it from the computation of the franchise tax. It also found that none of the gross receipts were attributable to this Commonwealth with the result that the gross receipts allocating fraction was restated with a numerator of zero. The only remaining allocating fraction is the wage and salary fraction which, applied to one-half of the value of appellant's capital stock, produced a tax base of $10,000,000 upon which a tax of $50,000 was assessed.

Appellant's first contention is that the court below erred in using the management fee paid to the United Gas Improvement Company as the numerator and denominator of the wage and salary fraction. It contends that this was a corporate expense but not a payment of wages or salaries. The management agreement between the United Gas Improvement Company and appellant provided that the former should supply to appellant "from its organization the following officers for our company: Vice-President (a financial executive), Secretary, Treasurer, Comptroller, and General Counsel, together with the personnel of the corresponding department of your Company, to perform such routine duties incident to such offices as our Company may direct." It was also provided "that no salaries are to be paid by our Company to these Officers, but for their services and the services of their departments we agree

to pay you $5000 per year in equal monthly installments, as follows:

| | |
|---|---|
| Vice-President | $1,500 |
| Secretary | $ 500 |
| Treasurer | $ 750 |
| Comptroller | $1,000 |
| General Counsel | $1,250." |

United Gas Improvement Company was also to be reimbursed for the traveling and living expenses of its employees while performing services for appellant away from the Philadelphia office of the Improvement Company.

This agreement was a contract for the services of five officers and for clerical assistance. These officers under the law were officers of appellant, despite their relation to United Gas Improvement Company, who had definite statutory obligations to appellant as its employees. The device of paying their salaries through the parent corporation was ingenious but not conclusive of their status. It is unlikely that the United Gas Improvement Company would contend that it is engaged in the labor brokerage business, supplying trained personnel to other corporations. It is clear that the amounts designated for each of the officers of the appellant were salaries which the officers were to receive indirectly through the United Gas Improvement Company. The court below has held that these persons were employees of appellant engaged in appellant's business during the year 1935, and that the sums paid to the United Gas Improvement Company for them were wages and salaries within the meaning of the Franchise Tax Act. The record supports this conclusion and it is affirmed.

We find no merit in the related contention of appellant that it was not engaged in doing business in this Commonwealth during the year 1935. It is clear that everything which the corporation did during that year— and its activities were extensive—was done in this state. The fact that its business involved dealing in intangi-

bles rather than tangibles does not relieve it from its just share of the tax burden. If its contention were to be adopted, no holding company could be subjected to taxation. The record shows that it held directors' meetings in this state, kept its securities in local bank deposit vaults, received and distributed large sums in dividends, rented an office here, and in general conducted here the business which it was authorized by the Commonwealth to conduct. We hold that it was engaged in business in this Commonwealth within the meaning of the tax legislation.

Appellant, however, refers to the former legislation imposing a capital stock tax on foreign corporations under which it was held that a corporation was not engaged in doing business in this state unless it had capital within the state employed in its business. From this it seeks to derive a similar limitation upon the application of the Franchise Tax Act. Clearly, this is erroneous. The former capital stock tax upon foreign corporations was a *property* tax which could only be imposed upon corporations having property subject to the jurisdiction of the taxing authorities. The franchise tax, however, is a tax on the privilege of doing business and is an *excise* tax, as we have pointed out in numerous cases. See *Commonwealth v. Columbia Gas and Electric Corporation,* 336 Pa. 209, 8 A. 2d 404; *Commonwealth v. Ford Motor Company,* 350 Pa. 236, 38 A. 2d 329; *Commonwealth v. Quaker Oats Company,* 350 Pa. 253, 38 A. 2d 325; *Commonwealth v. Monessen Amusement Company, Inc.,* 352 Pa. 120, 42 A. 2d 158. Section 20 of the Act of 1889, which has not been repealed, expressly imposes the tax upon "every corporation . . . now or hereafter incorporated or organized by or under the laws of any other state or territory of the United States . . . , and doing business in and liable to taxation within this commonwealth, *or* having capital or property employed or used in this commonwealth. . . ." Prior to the adoption of the Franchise Tax Act in 1935, amending the Act of 1889, this Section had no applica-

tion to foreign corporations which had no tangible property in Pennsylvania because the tax was a tax upon *property.* See *Callery's Appeal,* 272 Pa. 255, 116 A. 222. The amendment of the Act of 1889, substituting a franchise tax for a capital stock tax removed this necessary qualification upon Section 20. By Section 21(b) of the present Act, setting forth the formula for computing the tax base, the legislature expressly provided the method to be used in cases where the corporation had one, two, or all of the indicia of allocation which were designated as (1) tangible property, (2) wages and salaries, and (3) gross receipts from business assignable to Pennsylvania. The Act does not exempt any foreign corporation merely because it has no tangible property within the Commonwealth. So long as it exercises within this state the privilege of doing business it is subject to the payment of the excise tax computed in the manner which the legislature has set forth.

Appellant, confronted with this obvious legislative intent, raises the objection that, if the legislature intended to tax foreign corporations having no property within this jurisdiction, it should have given express notice in the title of the Act of 1935 of this intention. It contends that the title of the Act fails, in this particular, to meet the requirements of Article III, Section 3 of the Pennsylvania Constitution. In *Commonwealth v. Stofchek,* 322 Pa. 513, 185 A. 840, *Kelley v. Earle,* 325 Pa. 337, 190 A. 140, and *Gumpert's Estate,* 343 Pa. 405, 23 A. 2d 479, we had occasion to review this constitutional provision and to assert the principles governing its application. As stated in *Gumpert's Estate,* at page 407, by Mr. Justice HORACE STERN: "It is unnecessary to elaborate upon the oft-repeated principle that all the Constitution requires is that the title should put persons of a reasonably inquiring state of mind on notice of the general subject matter of the act. The incidental provisions of the statute need not be enumerated or indexed in the title if they are germane to the legislation as a whole. 'Unless a *substantive* matter, entirely dis-

connected with the named legislation, is included within the folds of the bill, the act should not be declared as a violation of the Constitution by reason of its title offending Section 3 of Article III.' "

The title of the Franchise Tax Act clearly states that its purpose is: "To further amend sections twenty and twenty-one of the act approved the first day of June, one thousand eight hundred and eighty-nine . . . by substituting a franchise tax on foreign corporations in lieu of the capital stock tax on such corporations. . . ." This was notice to all interested persons that the incidence of the tax upon foreign corporations had been changed and that an excise tax had been substituted for a property tax. We think that it is amply sufficient to put an interested person of inquiring mind upon notice that questions pertaining to the imposition of the former capital stock tax would not necessarily pertain to the imposition of an excise tax.

Appellant also contends that the inclusion in its capital stock valuation of stock held by it in domestic corporations results in double taxation and in discrimination against foreign corporations. The court below, although it had, in *Commonwealth v. Monessen Amusement Company, Inc.,* supra, sustained such a contention on behalf of another foreign corporation, rejected it in the case of this appellant. We have this day reversed the decision of the court below in the *Monessen* case, and we need not repeat here what was there stated. In the present case, the court below correctly decided that the refusal of the taxing authorities to exclude these shares from the valuation of appellant's capital stock was in accordance with the taxing statute, did not involve double taxation, and was not discriminatory in violation of the Federal and State Constitutions.

The judgment of the court below is affirmed.