382 Pa. 509 (1955)
Commonwealth, Appellant,
v.
American Telephone and Telegraph Company.
Supreme Court of Pennsylvania.
Argued May 23, 1955.
June 27, 1955.
*510 Before STERN, C.J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.
George W. Keitel, Deputy Attorney General, with him Ralph S. Snyder, Deputy Attorney General and Herbert B. Cohen, Attorney General, for appellant.
Roy J. Keefer, with him Leon D. Metzger and William H. Wood, for appellee.
OPINION BY MR. CHIEF JUSTICE HORACE STERN, June 27, 1955:
The question on this appeal concerns the proper application for the year 1950 of the corporate net income tax of the American Telephone and Telegraph Company.
The activities of the Company are conducted by two separate and unrelated units, one of which, the General Department, operates wholly outside of Pennsylvania, the other, the Long Lines Department, both within and without Pennsylvania. Through its Long Lines Department it operates a comprehensive national system of *511 long distance telephone lines for interstate communication; the revenues thus derived arise partly from the portion of the system located in Pennsylvania; the lines passing through Pennsylvania constitute its only property in this Commonwealth. The Long Lines Department has its own administrative and operating forces, its own accounts and its own records. All the activities in connection with the General Department are those of a holding company and are carried on from the Company's office in New York. The principal items of gross income derived from the activities of the General Department are dividends, interest, royalties and payments under license contract arrangements. The Company holds stocks of associated corporations which own and operate lines furnishing telephone services in their respective territories and it makes advances to those corporations as their needs require.
The Corporate Net Income Tax Act of May 16, 1935, P.L. 208, as amended up to the year 1950, defined "net income" as being the net income of the corporation for the calendar year or fiscal year as returned to and ascertained by the Federal Government, with an allowance, however, of deductions from net income on account of dividends received from any other corporation. Prior to 1950 the American Telephone and Telegraph Company reported its corporate net income tax on the basis of all its activities, those of its Long Lines Department and General Department alike, and settlements were made accordingly. In 1950 it followed the same practice and reported its total net income as $310,031,478.01. From this it deducted the dividends it received from other corporations amounting to $292,517,811.39, and also interest on certain obligations of the United States (Commonwealth v. Curtis Publishing Co., 363 Pa. 299, 69 A. 2d 410) of $3,772,114.60, *512 leaving a net income for allocation of $13,741,552.02. It then determined the allocating percentage according to the three fractions prescribed in the statute: (1) the value of the corporation's tangible property in Pennsylvania over the value of its tangible property wherever situated; (2) its expenditures for wages, salaries and commissions to employes assignable to Pennsylvania over its total expenditures for wages, salaries and commissions to employes; and (3) the amount of its gross receipts from business assignable to Pennsylvania over the amount of its gross receipts from all its business. For 1950 these fractions were as follows:

 Average value of tangible property in Pa. $ 9,303,111
1. _______________________________________ ____________ = .016063
 Average value of all tangible property 579,159,592
 Wages, salaries, etc., assignable to Pa. 8,187,353
2. _______________________________________ ____________ = .086140
 Total wages, salaries, etc. 95,046,603
 Gross receipts assignable to Pa. 17,687,158
3. ________________________________ ____________ = .032076
 Gross receipts from all business 551,408,957
 _______
 3) .134279
 _______
 .044759

When this allocating percentage of .044759 was applied to the net income for allocation it established the net income allocated to Pennsylvania as $615,058.13, on which the tax amounted to $24,602.33.
The Commonwealth admitted that all the figures employed in this calculation were correct, but it objected to the use of the unitary basis of the Company's activities on which it was made, that is, to the use of the total net income of the Company and the deduction therefrom of the dividends and United States obligations, and to the use in the denominators of the allocation fractions of the tangible property, wages *513 and gross receipts of the Company as a whole. The Department of Revenue and the Department of the Auditor General, and, on appeal, the Board of Finance and Revenue, adopted the contention of the Commonwealth and assessed a tax against the Company on a multiform basis of its activities, employing a calculation based on the operations only of its Long Lines Department and excluding those of its General Department. The tax thus imposed amounted to $237,756.83, which figure was obtained as follows: The net income of the Long Lines Department was $58,634,159.64. The statutory allocation fractions, using as the denominators only the tangible property, wages and gross receipts from the Company's operations in its Long Lines Department, were:

 104,485,199[1]
Tangible property fraction ___________ = .116489
 896,954,568[1]
 8,187,353
Wages and salaries fraction ___________ = .099094
 82,621,805
 17,687,158
Gross Receipts fraction ___________ = .088536
 199,772,668
 ________
 3) .304119
 ________
 .101373

Applying this allocating percentage of .101373 to the net income of the Long Lines Department the net income allocated to Pennsylvania was found to be $5,943,920.67 and the tax thereon $237,756.83. The Company appealed from this assessment to the Court of Common Pleas of Dauphin County, which sustained *514 its contention and fixed the tax at $24,602.33. The Commonwealth now appeals from that decision.
The controversy hinges on the sole question whether the corporate net income tax should be applied against the Company on a unitary or on a multiform basis, by the latter being meant the recognition of its two distinct activities, the one its operations in its Long Lines Department, and the other its operations as a holding company unrelated to any activities in Pennsylvania. The Corporate Net Income Tax Act itself makes no reference to, or provision for, any division of a corporation into different departmental units. It defines the corporate net income as that returned to and ascertained by the Federal Government; it provides that the tax should be based upon the portion of that net income determined by the prescribed allocation fractions and that the denominators of those fractions should be the value of all the corporation's tangible property wherever situated, the total expenditures of the corporation for wages and salaries to all of its employes, and the amount of its gross receipts from all of its business. The Act was held constitutional in Turco Paint and Varnish Co. v. Kalodner, 320 Pa. 421, 184 A. 37, but it was there stated (p. 430, A. p. 42) that "If, in particular cases, its operation will work an injustice or achieve an arbitrary result so far out of line with the actual facts as to cause it to be illegal . . . then will be the time to consider such charges." That time came shortly thereafter when there was presented to this court an appeal in the case of Commonwealth v. Columbia Gas & Electric Corp., 336 Pa. 209, 8 A. 2d 404. While that case did not involve the corporate net income tax but the franchise tax payable by a foreign corporation under the Act of May 16, 1935, P.L. 184, as amended, nevertheless the same principle was involved, the two Acts *515 being in all respects similar except that the one relates to the entire net income of the corporation and the other to the entire value of its capital stock, the allocation fractions being the same in both instances. The Columbia Gas and Electric Corporation conducted a holding company business outside of Pennsylvania and an operating business within the State for the manufacture of gasoline and natural gas. We held that the tax measured by the entire capital stock was subject to constitutional restrictions imposed by the due process, equal protection and interstate commerce clauses of the Federal Constitution, that the allocation of the taxable value to Pennsylvania must bear a fair relation to the amount of local business done by the corporation within the State, and that unless the value of the portion of capital stock of the corporation represented by its holdings in subsidiary companies, bonds and mortgages held outside of Pennsylvania were excluded from the computation of the tax the apportionment formula would allocate too large a taxable value to Pennsylvania. We therefore hold that, while the Act itself was constitutional, its application in the particular instance would work an unconstitutional result if its provisions were literally followed. We said (p. 224, A. p. 413): "Appellee performs only a part of its functions within the state, and in connection therewith employs a part of its tangible and some intangible property. Under the principles relating to corporations engaging in multiform business and considering that only part of appellee's business is conducted in Pennsylvania, as far as the capital stock value is related to tangible and intangible property, only such tangibles and intangibles should be taken into account as are concerned with the functions exercised within the state. . . . Its power to act as a holding company is authorized under *516 the laws of Delaware. It is obvious therefore that to include within the taxable measure all the property used in connection with this function would be to levy a franchise tax having no relation to the privilege granted by this State to appellee as an operating company or to any function actually performed herein." And again (p. 225, A. p. 413): "In view of the fact that the legislature intended only to levy a tax on a measure fairly representative of the corporation's franchise to do business in this State, under the exceptional situation here presented, it is the duty of the Court to construe the Act so as to cause the statute's application to be both constitutional and fair." Accordingly we held that, in determining the franchise tax to be levied on the Columbia Gas and Electric Corporation, the value of its assets represented by capital stock used in connection with its holding company business should have been excluded by the taxing officials.[2] This ruling was in accord with a number of cases in the Supreme Court of the United States holding that, in fixing the taxable value with reference to business done within the state where capital stock is used as a measure, the property without the state may be taken into consideration only if it be an organic or functional part of the property within *517 the state; thus only may the taxation of extraterritorial values be prevented: Wallace v. Hines, Director General of Railroads, 253 U.S. 66; Southern Railway Co. v. Kentucky, 274 U.S. 76; Hans Rees' Sons, Inc. v. North Carolina, 283 U.S. 123; Connecticut General Life Insurance Co. v. Johnson, Treasurer of California, 303 U.S. 77.
The Columbia Gas and Electric Corporation case was cited with approval and followed in Commonwealth v. The Mundy Corporation, 346 Pa. 482, 30 A. 2d 878. There the company involved was a Delaware corporation registered in Pennsylvania to do a general real estate business; it was held that securities owned by it consisting of United States Government bonds, Pennsylvania bonds, municipal and railroad bonds, were to be excluded in computing the corporation's franchise tax, since those securities had no function in the conduct of the company's real estate business in Pennsylvania.
Applying the principles thus enunciated, franchise tax settlements were regularly made by the Department of Revenue on the multiform basis when requested by corporations conducting multiform operations, and so, in the case of the American Telephone and Telegraph Company, its franchise tax was annually computed on the basis of its capital stock value and allocation factors relating to its Long Lines Department and excluding those relating to its General Department. Apparently the question did not arise with regard to the corporate net income tax until the case of Commonwealth v. The Baker-Whiteley Coal Company, 60 Dauph. 434 (aff. 62 Dauph. 207). There a corporation was engaged in two distinct and unrelated businesses, to wit, a tugboat business conducted wholly outside of Pennsylvania and a coal business conducted *518 in Pennsylvania and elsewhere, the one business being completely segregated from the other; the doctrine of the Columbia Gas and Electric Corporation case was followed because the general scheme of the Capital Stock Tax Act and that of the Corporate Net Income Tax Act are identical. Since that decision the taxing officials of the Commonwealth have indiscriminately sought to impose the corporate net income tax on a multiform basis in the case of corporations having multiform activities just as theretofore with respect to the franchise tax. The American Telephone and Telegraph Company resists that attempt because, as previously pointed out, its tax for the year 1950 on a unitary basis would be only $24,602.33, whereas on the multiform basis it would be $237,756.83, the difference resulting from the large deduction from its total income of dividends received from other corporations to which it would be entitled under the terms of the statute.
As already stated, it is clear that the Corporate Net Income Tax Act neither expressly nor impliedly provides for a computation of the tax on any other than a unitary basis, making no differentiation in the case of corporations carrying on multiform activities. According to its definition of net income, that of the American Telephone and Telegraph Company was $13,741,552.02, not $58,634,159.64, as contended by the Commonwealth. What the Columbia Gas and Electric Corporation case decided,  and all that it decided  was that if, in a particular instance, the application of the formula expressly specified in the Capital Stock Tax Act worked an unconstitutional result by imposing upon the corporation the taxation of values beyond the taxing power of the State, and if the corporation therefore objected to the tax, the Act must be so construed and applied as to avoid such a result by computing the tax on a multiform instead of a unitary *519 basis. In the present case, however, the American Telephone and Telegraph Company, so far from objecting to the application to it of the express provisions of the Corporate Net Income Tax Act, insists upon such application being made. It points out that this would not involve the taxation by Pennsylvania of any extraterritorial values inasmuch as the permissible deduction of the dividends of other corporations from the net receipts of its General Department results in no portion whatever of such receipts being taxed by Pennsylvania. Be that as it may, it is clear that, if the application of the Act according to its express terms is not objected to by the Company as involving in its particular case any unconstitutional or unfair result such as existed in the Columbia Gas and Electric Corporation case, it does not lie with the Commonwealth to refuse to apply the Act as written and thereby attempt to impose a higher tax than the Act provides. The Commonwealth argues that its own taxing officials may raise a question as to the constitutionality of the statute, but this overlooks the fact that the Act is not unconstitutional; it is only when its application in a given case brings about an unconstitutional result and the taxpaying corporation accordingly objects thereto, that it must be applied so as to avoid such a consequence. Since the Act as applied to the American Telephone and Telegraph Company does not involve any such unconstitutional result, and the Company makes no claim to the contrary, the court below properly fixed the tax in the amount of $24,602.33.
Judgment affirmed.
MR. JUSTICE JONES and MR. JUSTICE CHIDSEY dissent.
NOTES
[1] This numerator and denominator included the tangible property of the Company and certain inactive affiliated companies whose properties are used in the Long Lines Department in Pennsylvania and everywhere respectively.
[] But, where intangibles enter into the exercise of the franchise conferred by the state or privileges actually exercised within the state, the value of such intangibles may properly be included in the general tax base: Newark Fire Insurance Co. v. State Board of Tax Appeals, 307 U.S. 313, 319-321; Commonwealth v. Columbia Gas & Electric Corporation, 336 Pa. 209, 226, 8 A. 2d 404, 413; Commonwealth v. Eaglis Corporation, 354 Pa. 493, 497, 499, 47 A. 2d 661, 664, 665. In determining the amount of property or net income allocable to the state the burden is on the taxpayer to show by clear and cogent evidence that the taxing formula resulted in extraterritorial values being taxed: Butler Brothers v. McColgan, Franchise Tax Commissioner of California, 315 U.S. 501.