## Commonwealth *v*. Koppers Company, Inc., Appellant.

524

Argued May 25, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

 reargument refused December 31, 1959.

*Roy J. Keefer,* with him *Leon D. Metzger,* and *Hull, Leiby & Metzger,* for appellant.

*George W. Keitel,* Deputy Attorney General, with him *Anne X. Alpern,* Attorney General, for appellee.

OPINION BY MR. JUSTICE COHEN, November 24, 1959:

This appeal is from the decision of the Court of Common Pleas of Dauphin County sustaining the denial by the Board of Finance and Review of the Koppers Company's petition for review of the resettlement of corporate net income tax due by the company for the year 1953 under the provisions of the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, as reenacted and amended by the Act of December 27, 1951, P. L. 1746, 72 P.S. §3420a et seq.

This appeal challenges the makeup of the gross receipts allocation fraction as well as the constitutionality of the tax statute as construed and the tax resettlements made thereunder.

Under section 2 of section 3420b of the Corporate Net Income Tax Act, the net income of a corporation transacting part of its business in Pennsylvania and part of its business outside of Pennsylvania is apportioned to Pennsylvania by the use of three fractions, i.e., tangible property, wages and salaries, and gross receipts. Section 2(a) first provides for the specific

allocation to Pennsylvania of gains or losses from the sale or exchange of tangible capital assets situated within the Commonwealth. Section 2(b) provides that if such assets are situated without the Commonwealth, that gains or losses therefrom shall not be allocated within Pennsylvania. The remainder of the net income, referred to in tax parlance as "net income to be allocated," is then divided into three equal parts. Section 2(c). To each part is applied one of the three fractions heretofore mentioned.

The exact makeup of the gross receipts fraction is set forth in section 2(c)(3).[1] The instant controversy concerns the inclusion of certain items in both the numerator and the denominator of the gross receipts fraction, which inclusion has resulted in a larger allocation percentage and, hence, a greater tax imposed upon the company.

The facts surrounding the present appeal have been stipulated to by the parties and are, in pertinent part, herein summarized:

The Koppers Company is a foreign corporation (Delaware) which has registered in and is qualified to do business in Pennsylvania. During the taxable year 1953, the company was engaged within and without the Commonwealth in the manufacture and sale of chemicals, coke and by-products from coal. Its financial affairs were handled from its principal office in Pittsburgh. The company's tax report for 1953 reported $\frac{76,994,163}{266,604,533}$ as its third or gross receipts frac-

---

[1] "(3) Of the remaining third, such portion shall be attributed to business carried on within the Commonwealth, as shall be found by multiplying said third by a fraction, whose numerator is the amount of the taxpayer's gross receipts from business assignable to this Commonwealth as hereinafter provided and whose denominator is the amount of the taxpayer's gross receipts from all its business."

tion and an allocating percentage of .288795. There-after, the state tax departments made a resettlement of the account and changed the gross receipts allocation fraction to wit: amounts reported for dividends received and for interest from U. S. obligations were adjusted, and new items were added to the numerator and denominator. These latter items consisted of gross proceeds from sales of tangible assets, from sales of stocks and bonds and from maturities of U. S. 91-Day Treasury Bills. As a result of adding the new items to the gross receipts allocation fraction, the total fraction became $\frac{141,748,838}{331,883,135}$ and the allocating percentage became .427105. Later, as a result of filing by the company of a Report of Change in Federal Net Income, a second resettlement of the account was made; and the same allocation fraction as used in the first resettlement was applied to the adjusted net income. It is this second resettlement which is at issue in the instant case.

The company complains essentially of six items which it contends are not properly includible in the gross receipts allocation fraction. They are (1) dividends received; (2) interest from U. S. obligations; (3) interest from state and municipal obligations; (4) sale of tangible assets; (5) sale of stocks and bonds; and (6) proceeds from the 91-Day U. S. Treasury Bills. Although the company included some dividends and interest in the gross receipts fraction in its filed tax return, the inclusion of the full amounts of the six items increased the allocation percentage of the gross receipts allocation fraction from .288795 to .427105 or by .138310 as a result of the first resettlement. However, the *total* exclusion of the six items from the allocation fraction used in the second resettlement would reduce the fraction from .427105 to .287084 or by .140021. Moreover, the six items were treated by the

tax departments in the two tax resettlements as "gross receipts" within the purview of the tax statute and were included in the numerator and denominator of the gross receipts allocation fraction although *no income or gains from these sources were included in the total statutory tax measure—"Net Income to be allocated."*

In addition to the contention that the six items are not allocable factors in the gross receipts fraction, the company also urges that the tax statute is not only arbitrary, unreasonable and in violation of due process of law, but also that it is violative of the uniformity and equal protection of the laws clauses of the Federal and State Constitutions and is discriminatory against the obligations of the United States Government owned by the company.

In *Commonwealth v. Rockwell Manufacturing Co.*, 71 Dauph. 67, aff'd 392 Pa. 339, 140 A. 2d 854 (1958), it was ruled that the proceeds from the sale or redemption of securities were properly included in the numerator and denominator of the gross receipts fraction. This determination was based upon two previous decisions of the Dauphin County Court—*Commonwealth v. Electric Storage Battery Co.*, 57 Dauph. 201 (1946), and *Commonwealth v. Eaglis Corporation*, 55 Dauph. 356 (1944), both arising under the foreign franchise tax act. In the *Eaglis* case the Commonwealth had included the proceeds from the sale of the securities in the numerator and the denominator of the gross receipts fraction and this action was sustained by the court. In the *Electric Storage Battery* case the court held that the proceeds from the securities were sales and that sales of securities fell within the term "sales" as used in the franchise tax act.

We think that the court below properly included the gross proceeds from the conversion of assets by sale or maturity and the gross income from invest-

ments as gross receipts for the purpose of constituting and determining the gross receipts allocation fraction.

Highly refined and technical tax concepts have been developed by the accountant and legal technician primarily because of the impact of federal income tax legislation. However, this in no way should affect or control the normal usage of words in the construction of our statutes; and we see nothing that would require us not to include the proceeds here in question in the gross receipts allocation fraction unless statutorily such inclusion is prohibited. Under the ordinary basic methods of handling accounts, the term gross receipts, if the absence of any statutory definition of the term, must be taken to include the whole total gross receipts without any deductions. In 1956, under the provisions of the Act of March 6, P. L. 1247, 72 P.S. §3420b, section 2(c)(3) of the Corporate Net Income Tax Act was amended to proscribe the inclusion of gross proceeds from sales, redemptions, maturities or exchanges of securities as allocation factors in the gross receipts fraction. To us this is clearly indicative of the fact that prior to this 1956 enactment, the inclusion of those items in the gross receipts fraction was not statutorily proscribed. Had they not been proscribed from inclusion after 1956 by the amending act, the normal definition of gross receipts would have dictated their inclusion at all times.

We come to the same conclusion pertaining to interest and dividends. The exemption of dividends and interest from taxation, through their exclusion from net income to be allocated, does not also exclude those items from the gross receipts from business activity of the corporation. We determine, therefore, that all six items were properly included in the gross receipts fraction.

Beyond this problem of interpretation, the company raises several claims of violation of the federal and

state constitutions. Its contentions may be summarized thusly: (1) inclusion of the six items is arbitrary since the items bear no relationship either to the amount of business done in Pennsylvania or to the net income to be allocated; (2) inclusion of the six items produces a gross receipts allocation fraction which allocates an unreasonably disproportionate amount of taxable net income to Pennsylvania; (3) because some other taxpayers did not include the gross proceeds of securities in their 1953 returns, the uniformity clause of the State Constitution and the equal protection clause of the Federal Constitution is violated; and (4) inclusion of the maturities or redemptions of United States securities in the gross receipts fraction imposes a discriminatory burden on these obligations.

The gross receipts fraction, as well as the tangible property and wages and salaries fractions, is part of a method used to apportion the income of a corporation doing business in more than one state so that each state may base its tax on only a portion of the income, a portion considered allocable to that state. Use of the three fraction formula has been held reasonable and valid: *Butler Bros. v. McColgan,* 315 U. S. 501, 86 L. Ed. 991 (1942), and *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 184 Atl. 37 (1936), even though that formula may not precisely measure the corporation's income actually attributable to the taxing state. *Guaranty Trust Co. v. Virginia,* 305 U. S. 19, 83 L. Ed. 16 (1938). Just as in cost accounting it becomes almost impossible to make a completely accurate cost analysis, so here in the allocation of income to the various taxing states there is usually some overlapping by the several states, which results in the imposition of a tax on more than 100% of the corporation's income. This is not constitutionally fatal and would only be declared so when there has been an unreasonable distortion of income.

Secondly, all three fractions are designed as measures of corporate activity in the taxing state. We have had occasion to point out that the fractions as used in the Corporate Net Income Tax Act are the same as those used in the foreign franchise tax act. *Commonwealth v. American Telephone & Telegraph Co.*, 382 Pa. 509, 515, 115 A. 2d 373, 375 (1955). In construing the latter act we have noted that intangibles which are a necessary part of corporate activity and are within the framework of the corporate functioning, actively or as reserve, may be considered in determining the tax. *Commonwealth v. Columbia Gas & Electric Corporation*, 336 Pa. 209, 223, 8 A. 2d 404, 412 (1939). In this respect there exists no requirement that gross receipts from "business" be so narrowly defined as to exclude from the gross receipts fraction everything not directly attributable to the company's construction work or to its manufacture and sale of chemicals, coke and by-products of coal.

Appellant would also require some direct relationship between the specific elements includible in the tax base—net income—and those includible in the fractions. This view is too restrictive. All that the Constitution here requires is that the fractions be composed of elements contributing to the business activity of the company. The six items in question here meet this test.

In the present case the Commonwealth's resettlement resulted in an increase in the combined allocation percentage from approximately 30% to approximately 34.6%. Appellant must show that this change produces an allocation of income to Pennsylvania so disproportionate to the actual income attributable to the state that it is inherently unreasonable. The contention that each of the three fractions must separately meet such a test overlooks the fact that it is precisely because one of the fractions may distort the allocation that three fractions are used. The fairness of such a

method has long been upheld, *Butler Bros. v. McColgan,* supra; and appellant has produced no facts showing an unreasonable distortion of income here.

As for the alleged violation of the uniformity and equal protection clauses of the state and federal constitutions, appellant shows no more than the Commonwealth admits—that through lack of knowledge or information either at any time or until the period for resettlement had passed, some taxpayers, similar to the appellant, succeeded in paying a tax which did not reflect the inclusion of gross proceeds of securities in the gross receipts fraction. Whether this fact resulted from a lack of comprehensive investigative procedures by the Commonwealth or from withholding of information by taxpayers which could not reasonably be discoverable within the allowable period, it is far from the result of a deliberate, purposeful discrimination in the application of the tax which must be shown before the constitutional safeguards are violated. Mere error by a taxing officer in applying a statute which imposes the same tax base and the same rate of tax on all corporations similarly situated does not infringe upon these protections. See *Commonwealth v. Budd Company,* 379 Pa. 159, 173, 108 A. 2d 563, 569 (1954).

Appellant's final constitutional argument is that the inclusion of the proceeds from maturities of federal securities in the gross receipts fraction results in discrimination against United States obligations and is, hence, unconstitutional. There are several answers to this. First, appellant did not raise this question in its statement filed pursuant to Rule 40 of the rules of this Court and may be deemed to have waived it. Secondly, apart from this, the Corporate Net Income Tax Act does not tax the income from federal securities. Such a tax, while simultaneously excluding the income from state and municipal securities, would be discriminatory and has been so held. *Commonwealth v. Cur-*

*tis Publishing Co.,* 363 Pa. 299, 69 A. 2d 410 (1949). Therefore, income from all three sources is excluded from the income taxed. Lastly, proceeds from all securities in which the corporation invests are included in the gross receipts fraction, thus avoiding any trace of discrimination. For these reasons we find no merit in appellant's contention.

Appellant also complains that the court below erred in affirming the Commonwealth's thirteenth request for conclusions of law. While we feel that such request and affirmance were unnecessary in this case, we do not see how appellant has been injured. All of the matters in question were contained in a stipulation of facts entered into by the parties and placed before the court. The Commonwealth's objection to their relevancy and materiality was sustained only after the court had given its decision on the law and had considered the facts contained in the stipulation. The court's exclusion of these facts pursuant to the Commonwealth's request was, therefore, simply a decision that those facts had ultimately proved immaterial in view of the legal conclusions stated. It in no way prejudiced the appellant.

Judgment affirmed.

Mr. Justice McBRIDE took no part in the consideration or decision of this case.