Commonwealth, Appellant, *v.* Rieck Investment
Corporation.

Argued May 25, 1965. Before BELL, C. J., MUSMAN-
NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Vincent X. Yakowicz*, Deputy Attorney General, with him *Walter E. Alessandroni*, Attorney General, for Commonwealth, appellant.

*Carl H. Cordes*, for appellee.

OPINION BY MR. JUSTICE JONES, September 29, 1965:

This appeal, involving the imposition by the Commonwealth of a franchise tax upon a foreign corporation, presents a problem of first impression in this Court.

Rieck Investment Corporation (Rieck) is a Delaware corporation registered and authorized to do business in Pennsylvania its business being the purchase, sale and holding for investment purposes of securities and other properties.[1] Rieck maintained an office in Pittsburgh, kept its books, records, securities and bank accounts in Pennsylvania and, concededly, at the time in question was "doing business" in Pennsylvania.

Prior to 1948, Rieck bought and sold realty in Florida within the scope of its business purposes. On May 16, 1946, the Governor of Florida cancelled, for nonpayment of corporate taxes, Rieck's certificate of authority to do business in that state[2] and, by June 1948, Rieck had disposed of the last of its realty holdings in Florida. However, in 1953, Rieck acquired two vacant lots in Dade County, Florida, which, concededly, produced no income. During the time in question in the

---

[1] At the time in question on this appeal, Rieck's holdings were in excess of ten million dollars.

[2] On November 8, 1962,—*after* the present litigation was instituted in the court below—Rieck applied for and received restoration of its right to do business in Florida.

instant litigation Rieck paid no taxes, maintained no office and was not authorized to do business in Florida.

For the calendar year 1956, Rieck filed a franchise tax report in this Commonwealth. In that report, as part of the denominator of the tangible property fraction employed for the ascertainment of its tax liability, Rieck included the value of its two Florida lots ($8,802). On December 1, 1959, the appropriate officials of the Commonwealth made a settlement of Rieck's account which reflected a total tax liability of $19,813.53. In August 1961, a resettlement was made which *excluded* from the denominator of the tangible property fraction the value of the Florida lots, an exclusion which resulted in a total tax liability of $27,500.[3]

The Board of Finance and Review refused Rieck's petition for a review of the resettlement. On appeal, the Court of Common Pleas of Dauphin County set aside the resettlement and upheld Rieck.[4] From that order the present appeal was taken.

The instant appeal presents two questions involving the construction of the Franchise Tax Act[5] and one question of fact. These questions are: (1) does the apportionment formula set forth in the Franchise Tax Act apply to a foreign corporation whose business is confined to Pennsylvania? (2) may tangible property of the foreign corporation located in a state other than Pennsylvania and which is unrelated to the business done by the corporation in Pennsylvania be included

---

[3] The exclusion of the value of these lots increased Rieck's tax liability by $7,686.47, or, approximately, 30% of its tax liability as originally settled.

[4] The basis of the court's ruling was that, even though Rieck was not "doing business" in Florida and was "doing business" *only* in Pennsylvania, Rieck could use the statutory apportionment formula and include the value of the two Florida lots in the denominator of the tangible property fraction.

[5] Act of June 1, 1889, P. L. 420, §21, as amended, 72 P.S. §1871.

in the denominator of the tangible property fraction of the Franchise Tax Act? (3) does the record justify a finding that Rieck was not doing business in Florida in 1956?[6]

## Does the Apportionment Formula in the Franchise Tax Act Apply to a Foreign Corporation Whose Business Is Confined to Pennsylvania?

Rieck, although it claims that it was "doing business" in Florida during 1956, maintains that *by reason of the language of the Franchise Tax Act* a foreign corporation which does business in Pennsylvania, may take advantage of the apportionment formula contained in that statute, even though it does not do business in any other state.[7] Rieck's position was upheld in the court below.

The position of the Commonwealth is that the legislative intent, implicit in the statute, is that the apportionment formula set forth in the statute is available for use only by a foreign corporation which, in addition to "doing business" in Pennsylvania, is actually engaged in "doing business" in a state or states other than Pennsylvania.

Through the medium of the Franchise Tax Act, supra, the legislature imposes an excise tax on the *privilege* extended to foreign corporations of "doing business" within the Commonwealth: *Commonwealth v. Columbia Gas & Electric Corporation*, 336 Pa. 209, 221, 222, 8 A. 2d 404; *Commonwealth v. American Gas Co.*,

---

[6] The court below did not reach this question.

[7] Rieck agrees that in *theory* "the purpose of the allocation fractions is to measure the franchise of a foreign corporation exercised in Pennsylvania" but urges that, by reason of the statutory language, the taxing statute provides for "but one formula for determining 'taxable value' which must be applied to all corporations subject to its provisions:" Rieck's Brief, p. 7.

352 Pa. 113, 117, 42 A. 2d 161. As stated by this Court in the *American Gas* case, supra (352 Pa. at 118) : "So long as [the foreign corporation] exercises within this state the privilege of doing business it is subject to the payment of the excise tax computed in the manner which the legislature has set forth." Rieck does not dispute that, as a foreign corporation doing business in Pennsylvania, it is subject to payment of the tax. The present controversy involves the ascertainment of the appropriate tax base to be applied to Rieck in fixing its tax liability.

Section 21(b) of the taxing statute provides: *"Every* foreign corporation, . . . *whatsoever,* from which a report is required under the twentieth section [of the statute],[8] shall be subject to" the tax. (Emphasis supplied). The statute imposes "a franchise tax not *upon* capital stock but *measured by* capital stock. The tax base [is] determined, not by the allocation to Pennsylvania of an arbitrary percentage of the total capital stock of the corporation, but, through the use of a tripartite formula, by ascertaining, insofar as possible, the relation of the corporate activities in this State to the activities of the corporation everywhere" : *Commonwealth v. Ford Motor Co.,* 350 Pa. 236, 240, 38 A. 2d 329. As the yardstick to measure such corporate activities the statute provides "that the entire capital stock of a foreign corporation, at its proper valuation, should be divided into three equal parts. The resulting figure may be referred to, for convenience, as the multiplicand. This is first multiplied by the decimal fraction representing the ratio of tangible property in this State to tangible property of the corporation everywhere. It is then to be multiplied by a decimal frac-

---

[8] Section 20 requires every foreign corporation "doing business in and liable to taxation" in Pennsylvania or "having capital or property employed or used" in Pennsylvania to make this report: Act of June 1, 1889, P. L. 420, §20, as amended, 72 P.S. §1901.

tion representing the ratio of wages paid by the corporation in this State to the total of its wage payments everywhere.  Finally, it is multiplied by the decimal fraction representing the ratio of gross receipts assignable to Pennsylvania to gross receipts from all sources. The sum of these three multiplications is the tax base, representing the value of the Pennsylvania franchise, . . . .": *Commonwealth v. Ford Motor Co.*, supra (350 Pa. at 240, 241).  The instant controversy involves only the "tangible property" fraction and, specifically, whether the value of Rieck's Florida lots may be included in the denominator of such "tangible property" fraction.

Both Rieck and the court below point out that the words "every" and "whatsoever", contained in the first sentence of §21(b) of the statute, are so comprehensive that they indicate that the legislature intended application of the statutory apportionment formula to *all* foreign corporations "doing business" in Pennsylvania, regardless of whether such corporations were "doing business" in any other state or states.  Moreover, Rieck and the court below, relying on the statutory description of the tangible property fraction as containing "the value of *all* taxpayer's tangible property wherever situated" and upon the significance of the *inclusion* in the Corporate Net Income Tax Act[9] of a clause providing for a tax base "[i]n case the entire business of any corporation . . . is not transacted within this Commonwealth" and the *omission* of any such clause in the Franchise Tax Act, conclude that it was the legislative purposes not to restrict the use of the statutory apportionment formula to foreign corporations "doing business" in another state or states in addition to Pennsylvania.

It is well settled that state taxation of a foreign corporation's intrastate business activities must proceed

[9] Act of May 16, 1935, P. L. 208, as amended, 72 P.S. §3420b.

along such lines as not to infringe upon the due process, the interstate commerce or equal protection clauses of the Constitution of the United States. State taxation cannot reach income or property derived from business activities conducted by foreign corporations outside the state's border and over which the state has no jurisdiction. To satisfy the constitutional requirements and yet to permit states to tax foreign corporations on a basis which would bear a fair relation to the amount of local business done within their borders, the so-called apportionment or allocation formulas were devised as methods of measuring the value of the business activities within the state of such foreign corporations.[10] As this Court said in *Commonwealth v. Koppers Co., Inc.*, 397 Pa. 523, 530, 156 A. 2d 328: "The gross receipts fraction, as well as the tangible property and wages and salaries fractions, is part of *a method used to apportion the income of a corporation doing business in more than one state* so that each state may base its tax on only a portion of the income, a portion considered allocable to that state . . . ."[11]

In subsections (1), (2) and (3) of §21(b) of the taxing statute which set forth the allocations fractions for measuring the franchise tax the legislature has described the method to ascertain "such portion [of one third of the value of the foreign corporation's whole

---

[10] *Butler Bros. v. McColgan*, 315 U.S. 501, 62 S. Ct. 701; *Underwood Typewriter Co. v. Chamberlain*, 254 U.S. 113, 41 S. Ct. 45; *Commonwealth v. Columbia Gas & Electric Co.*, supra, footnote pp. 220, 221.

[11] *Koppers*, supra, involved the Corporate Net Income Tax Act and not the Franchise Tax Act. However, we recognized in *Koppers* that the allocations fractions used in both statutes were the same. See also: *Commonwealth v. Rockwell Mfg. Co.*, 392 Pa. 339, 348, 140 A. 2d 854; *Commonwealth v. American Telephone & Telegraph Co.*, 382 Pa. 509, 514, 115 A. 2d 373. The fractions in the Franchise Tax Act measure the value to the corporation of the privilege of doing business within the state.

capital stock]" as "shall be attributed to the business [of the foreign corporation] carried on within the Commonwealth." See also: *Commonwealth v. Lukens Steel Co.*, 402 Pa. 304, 309, 167 A. 2d 142.

An examination of the statutory provisions indicates beyond any doubt the legislative intent to set up a tax base for the franchise tax which would fairly reflect the value of the business of a foreign corporation done within Pennsylvania and thus the value to the foreign corporation of the privilege of doing such business. Such conclusion, however, leaves unanswered the question whether the legislature by the terms of the taxing statute has restricted the use of the apportionment formula in calculating the tax base of a foreign corporation to only such foreign corporations as are doing business in another state or states as well as Pennsylvania.

In analyzing the statutory provisions we must bear in mind certain well settled principles of statutory construction: (a) that a taxing statute must be strictly construed and any doubt or uncertainty as to the imposition of a tax must be resolved in favor of the taxpayer (Statutory Construction Act of May 28, 1937, §58(3), P. L. 1019, 46 P.S. §558; *Commonwealth v. Willson Products, Inc.*, 412 Pa. 78, 83, 84, 194 A. 2d 162); (b) even though a court may be convinced that the legislature intended to enact something different from that which it did, if the language of the statute is clear and unambiguous the statute must be given its plain and obvious meaning (Statutory Construction Act, supra, §51, 46 P.S. §551; *Farmers-Kissinger Market House Co., Inc. v. Reading*, 310 Pa. 493, 498, 165 A. 398); (c) the " 'legislature must be intended to mean what it has plainly expressed . . . . It matters not, in such a case, what the consequences may be' " (*Orlosky v. Haskell*, 304 Pa. 57, 62, 155 A. 112); (d) it is not for the courts to add, by interpretation, to a statute,

a requirement which the legislature did not see fit to include (*Olyphant Borough School District v. American Surety Co.*, 322 Pa. 22, 28, 184 A. 758; *Kusza v. Maximonis*, 363 Pa. 479, 482, 70 A. 2d 329).

On the same day—May 16, 1935—the legislature enacted two tax statutes, the Corporate Net Income Tax Act and the Franchise Tax Act. Both statutes imposed, inter alia, taxes upon foreign corporations and, for the ascertainment of the appropriate tax bases, provided identical apportionment or allocation formulas.[12] However, in one important respect, the statutes differ. The Corporate Net Income Tax Act (§2,2.), provides for the application of the apportionment formula "[i]n case the entire business of any corporation . . . is not transacted within this Commonwealth." The Franchise Tax Act draws no such distinction; on the contrary, its statutory language makes applicable the tax to *every* foreign corporation *whatsoever* and does not differentiate between foreign corporations in the application of the formula. Such a diversity of approach by the same legislative body on the same date to the same general problem of the taxation of foreign corporations is highly significant and indicative of a legislative purpose not to restrict the use of the apportionment formula in the Franchise Tax Act to foreign corporations whose "entire business" is not "transacted within this Commonwealth".

In addition to the diversity of the legislative approach in these two tax statutes, we have the plain, unambiguous and comprehensive language of §21(b) of the Franchise Tax Act applied to "every" foreign corporation "whatsoever". Under such circumstances, we

---

[12] On occasion we have commented on the general similarity of these two statutes: *Commonwealth v. American Telephone & Telegraph Co.*, 382 Pa. 509, 514, 115 A. 2d 373; *Commonwealth v. Rockwell Manufacturing Co.*, 392 Pa. 339, 348, 140 A. 2d 854; *Commonwealth v. Koppers Co., Inc.*, 397 Pa. 523, 531, 156 A. 2d 328.

find no expression of a legislative intent to confine the use of the apportionment formula to those foreign corporations who transact business *without* as well as *within* Pennsylvania.

In theory we may agree with the Commonwealth that the use of the apportionment formula *should be* subject to the restriction which it urges and we are fully aware that, by the lack of such restriction in the statute, a foreign corporation by the subterfuge of title ownership of tangible property in another jurisdiction may effect a considerable reduction in its tax liability in Pennsylvania. However, if the plain language of the statute provides no such restriction, it is not for the courts to add such a restriction but a matter for legislative action. Recently, this Court said: ". . . it is not for us to legislate or by interpretation to add to legislation, matters which the legislature saw fit not to include: [citing authorities]": *Hochgertel v. Canada Dry Corporation,* 409 Pa. 610, 614, 187 A. 2d 575.

Our research indicates that this Court did in one instance consider the imposition of the franchise tax upon a Delaware corporation "doing business" *only* in Pennsylvania but the instant problem was neither raised nor considered in that case: *Commonwealth v. Eaglis Corporation,* 354 Pa. 493, 47 A. 2d 661.

In our view, the court below was correct in ruling that, under the language of the Franchise Tax Act, the use of the apportionment formula is not restricted to foreign corporations doing business in another state or states in addition to Pennsylvania and that, even though Rieck was not "doing business" in Florida in 1956, such fact did not deprive it of the use of the statutory apportionment formula.

Is Extraterritorial Tangible Property, Unrelated to
Taxpayer's Business in Pennsylvania, Includible
in the Denominator of the Tangible Property
Fraction?

The Commonwealth contends that, even if Rieck may use the apportionment formula, the value of the Florida lots must be excluded from the denominator of the tangible property fraction because the ownership of such lots is not connected with Rieck's business in Pennsylvania.[13]

In *Commonwealth v. Columbia Gas & Electric Co.*, 336 Pa. 209, 222, 223, 8 A. 2d 404, this Court, considering the Franchise Tax Act, said: "In applying the formula set up by the legislature, since the value of the capital stock is used as a measure, the taxable value of the franchise must have some relation to the business done in the taxing state. The Supreme Court of the United States in a number of cases has held that in fixing the taxable value with reference to property and business done within the state where capital stock is used as a measure, *the property without the state may be taken into consideration only if it is an organic or functional part of that within the state.* [citing authorities]". (Emphasis supplied.) See also: *Commonwealth v. American Gas Company*, 54 Dauph. 115, 137, aff'd 352 Pa. 113, 42 A. 2d 161; and comment thereon in Corporate Taxation and Procedure in Pennsylvania, Stradley & Krekstein (2d Ed. 1952), §161 (B).

In *Commonwealth v. The Mundy Corporation*, 346 Pa. 482, 30 A. 2d 878, we held that securities of a Delaware corporation engaged in doing a real estate business in Pennsylvania were to be excluded in computing the franchise tax of the corporation inasmuch as

---

[13] The record indicates that the holding of these lots has no connection with Rieck's business activities in Pennsylvania.

such securities had no function in the conduct of the company's real estate business in Pennsylvania.

In line with the rationale of these cases, if Rieck was engaged in a multiform as contrasted with a unitary business, the value of any assets used in connection with a business unconnected with Rieck's business in Pennsylvania should have been excluded by the taxing authorities.

However, in *Commonwealth v. American Telephone & Telegraph Company*, 382 Pa. 509, 115 A. 2d 373, this Court in commenting on the *Columbia Gas* case held that the ruling in that case was that if, *in a particular instance,* the application of the apportionment formula "worked an unconstitutional result by imposing upon the [foreign] corporation the taxation of values beyond the taxing power of the State, and if the corporation therefore objected to the tax, the Act must be so construed and applied as to avoid such a result by computing the tax on a multiform instead of a unitary basis." (p. 518). The Court then stated (p. 519) : ". . . it is clear that, if the application of the Act according to its express terms is not objected to by the Company as involving in its particular case any unconstitutional or unfair result . . . it does not lie with the Commonwealth to refuse to apply the Act as written and thereby attempt to impose a higher tax than the Act provides."

Since the *American Telephone & Telegraph Company* case it would appear that "the computation on a segregated basis is a privilege of the taxpayer, which privilege it may or may not avail itself of. The Commonwealth cannot compel it to exercise the privilege. The Commonwealth suggested that if it is a violation of the taxpayer's constitutional rights to tax on a unitary basis when a segregated basis means less tax, it is a violation of the rights of the Commonwealth to be limited to taxing on a unitary basis when a segregated

basis will give a higher tax. The court answered that the Commonwealth can hardly claim that a tax law is unconstitutional merely because it provides for less tax than might be provided by different language."[14]

In the case at bar, Rieck claims that there is nexus between the holding of the Florida lots and its Pennsylvania business activities and, therefore, on the basis of a unitary basis it should be permitted to include the value of these lots in the tangible property fraction denominator. The thrust of the Commonwealth's argument is that the holding of the Florida lots is unrelated and unconnected with Rieck's Pennsylvania business activities, and to that extent, Rieck is engaged in multiform business. Assuming, arguendo, that the Florida lots are unconnected with Rieck's Pennsylvania business activities, the Commonwealth's argument encounters two obstacles: (1) under the rationale of the *American Telephone & Telegraph Company* case the right to question the exclusion of assets of an unrelated business activity from the tangible property fraction lies with the taxpayer and not the Commonwealth; (2) under the language of the Franchise Tax Act the denominator is expressly stated to be "the value of *all* the taxpayer's tangible property *wherever* situated." (Emphasis supplied.) Under the clear wording of the statute, Rieck was entitled to include in the denominator of the tangible property fraction the value of its Florida lots, even though such lots were unrelated to the business Rieck conducted in Pennsylvania.

In view of the conclusion we reach it is unnecessary to determine the third question raised, i.e., whether the evidence on the record indicates that Rieck was in fact "doing business" in 1956 in Florida.

Order affirmed.

---

[14] 18 U. Pitt L. Rev. 253.