## Commonwealth v. Wagner

*Robert W. Feeman,* of *Egli, Walter, Reilly & Wolfson,* for Commonwealth.

*Keith L. Kilgore,* of *Spitler, Rowe, Silberman & Kilgore,* for defendant.

GATES, P. J., December 6, 1972.—Section 620 of The Vehicle Code of April 29, 1959, P.L. 58, 75 PS §620, provides, in pertinent part, as follows:

"Any person whose operator's license or learner's permit has been suspended, or who has been deprived of the privilege of applying for an operator's license or learner's permit under the provisions of this act, shall have the right to file a petition, within thirty (30) days thereafter, for a hearing in the matter in the court of common pleas of the county in which the operator or permittee resides . . ."

The Secretary of the Department of Transportation notified petitioner by sending him a letter dated April 14, 1972, that his operating privileges were to be withdrawn effective May 19, 1972. This letter was mailed to the address of the petitioner as reflected in the conviction report of petitioner filed by a district magistrate following petitioner's conviction for violating section 1027(b) of The Vehicle Code of April 29, 1959, P.L. 58.

Harold Wagner did not file this appeal until June 28, 1972.

The Commonwealth appeared before us and moved to quash the appeal as untimely. We reserved our decision and heard petitioner's testimony. It would appear that we should have promptly quashed the appeal.

The Commonwealth Court speaking in Brown v. Department of Transportation, 4 Comm. Ct. 308 (1972), announced that, ". . . No court has power to extend the time for appeal as an act of mere indulgence . . ." In that case the court quashed a suspension appeal because it was tardily filed.

Petitioner argues that he did not receive the notice of the suspension in the mail. While he concedes that at the time of the violation he did reside at the

address to which the notice was mailed he has moved two times since then. He stated that he did not know that his license was suspended until a State policeman personally called at his residence on June 15, 1972, and notified him that he was under suspension.

There is some loose language in cases on our jurisdictional level which seems to indicate that the 30 days does not begin to run until the notice has been received, although no court has been faced directly with the question. We cannot be too critical of other courts for using such loose language, because we did the same thing in Schomburg Suspension, 11 Lebanon 387. However, we were not there faced directly with the problem either, so this is a case of first impression.

In Ballentine's Law Dictionary, at page 1274, "thereafter" is defined as "After a certain event." Thus, a plain reading of section 602 limits the time within which an appeal from the suspension may be filed. The time is within 30 days thereafter. "Thereafter" refers to the time the operator's license is suspended and not the time that the operator receives notice that his privileges have been suspended as petitioner contends. This would be adding language to the statute and we are not permitted to do this under the guise of interpretation: Commonwealth v. Rieck Investment Corp., 419 Pa. 52 (1965).

Had the legislature intended to allow a motorist 30 days after receiving the notice of his suspension in which to appeal, it could have plainly said so. Certainly, they were aware of the fact that the date of the suspension and the date that notice of the suspension would be received by a motorist could very well be two different dates. We can only conjecture, but we certainly suspect, that the legislature

was mindful of the public interest over that of the individual interest when establishing the period of time within which to appeal. Had they intended to allow 30 days after the receipt of notice by the motorist, they were most likely aware of the fact that the Commonwealth would be put to specific proof of receipt of notice. Nor did it likely escape the attention of our economically motivated legislators that, in most cases, this would require the expensive mailing of registered letters with return receipts.[1] Conjecturing further, they probably balanced this expense against the usually reliable postal system and its method of forwarding mail when they are notified of a change of address. Whatever the motives were is pure speculation on our part. But the results of the deliberation as expressed in the concrete language of section 620 permits but one interpretation. Therefore, we hold that the 30-day limitation of time within which a motorist can appeal commences on the date of the suspension and not on the date that the notice of suspension is received by the motorist.

We are aware that our interpretation would allow mischief on the part of the secretary. For example, he could issue an order of suspension and delay 31 days before mailing it to the motorist. The fact that a statute is capable of being used in an evil manner is no reason for us to rewrite it. The legislature writes the law. We merely interpret it. If it should be rewritten, the plea should be addressed to the legislature, and not the courts.

---

1. We do not wish to minimize the economic considerations in mailing letters. Recently, the president of a large company wanted to send a letter to all his employes. After weighing the costs, he found it to be more economical to purchase prime television time to deliver his message than to mail a first class letter.

We are unaware of any case where the secretary has acted improperly in this regard. Our experience has been that the secretary gives ample notice of the suspension order before it becomes effective. Thus in this case the secretary gave the petitioner nearly 30-days notice in advance of the effective date of the suspension. Had petitioner left his forwarding address with the post office, he would have received the notice in plenty of time to appeal within the 30 day period.

## ORDER

And now, to wit, December 6, 1972, the appeal is dismissed, and the reinstated suspension shall be issued within 30 days of the date of this order.