## Commonwealth v. Sterling

*Richard C. Fox* and *James H. King*, for appellant.

*Walter E. Alessandroni*, Attorney General, and *Edward T. Baker*, Deputy Attorney General, for Commonwealth.

SWOPE, P. J., August 2, 1966.—This is an appeal from a decision of the Board of Finance and Revenue of the Commonwealth of Pennsylvania, dated April 5, 1963, refusing to grant fully the relief prayed for in appellant's petition for review of assessment of sales and use tax levied against it by the Department of Revenue, Bureau of Sales and Use Tax, for the period January 1, 1958, to December 31, 1960, pursuant to the Act of March 6, 1956, P. L. 1228, as amended, 72 PS §3404-1 et seq., [now 72 PS §3403-1]. The case was heard de novo on stipulations of fact and agreement to try without a jury.

This appeal initially involved two items of use tax assessment. The first, embracing the taxability of the sales and use of replacement and repair parts from inventory, has been settled by agreement of the parties. The sole remaining question concerns the taxing authority's refusal to allow a credit for "trade-ins" in its assessment of use tax on certain coin-operated machines employed by appellant in the operation of its business.

### FACTS

During the period involved herein, taxpayer operated as a partnership which it had compartmented into the following three divisions, only the first two of which are concerned in the instant appeal:

1. "Jobbing"—sales and service of new and used

coin-operated machines of all types, including pinball machines and vending machines.

2. "Road"—placement of coin machines in hotels, taverns, and similar locations, pursuant to profit sharing plans.

3. "Park"—Rocky Glen Amusement Park and related real estate rental operations.

Although the entity involved is a single partnership, in its books of account the three operations are basically segregated, with each item of expense insofar as possible being charged against the individual operation to which it is attributable. Administrative and other expenses which overlap are distributed on a formula basis.

In order to comprehend the present dispute, it is necessary to examine the procedure employed by appellant in computing its sales and use tax liability. "Jobbing" is responsible for the purchase of coin-operated machines. When the machines are originally purchased by "Jobbing", there is no sales tax paid to the vendor; nor does appellant at that time declare or remit the use tax. When a new machine is resold without ever having been put to use by "Road", the sales tax is collected from the vendee and remitted to the Commonwealth in accordance with the statute. The procedure, and it is here that the controversy arises, differs when the machines are first put to use by "Road", as indicated above, before being sold. When a new machine is transferred from "Jobbing" to "Road" to be placed in a tavern or hotel, appellant accrues on its books a use tax computed on the full cost of the machine. At the end of each month, however, in computing the use tax due, appellant offsets the use tax accrual by the tax collected on the sale of used machines (transferred by "Road" to "Jobbing" as they are taken out of profit sharing service) during that particular month. This net amount is then remitted to the Commonwealth as

the use tax due.[1] In effect, appellant calculates its use tax on the cost of the machines minus the amount received on resale.

The Pennsylvania sales tax statute provides as follows: "There is hereby imposed upon the use, . . . within this Commonwealth of tangible personal property purchased at retail . . . a tax of five (5) percent of the purchase price . . .", 72 PS §3403-201(b).

"Purchase price" is defined at 72 PS §3403-2(f)(1) as:

"The total value of anything paid or delivered, or promised to be paid or delivered, whether it be money or otherwise, in complete performance of a sale at retail or purchase at retail, as herein defined, . . ."

From this purchase price, the statute authorizes the following deduction:

"There shall be deducted from the purchase price the value of any personal property actually taken in

---

[1] This procedure can be understood more easily by the following examples:

"Jobbing" purchases machine X at a cost of $10,000 on July 1. The same day, this machine is transferred to "Road" and put in a hotel. At this time, appellant accrues $500 use tax (5 percent x $10,000) on its books. On July 20, "Road" removes the machine from the hotel and retransfers it to "Jobbing". On the same day, "Jobbing" sells the machine to a third person for $2,000, collecting $100 (5 percent x $2,000) from the vendee and remitting this to the Commonwealth as sales tax. On July 30, the following entry is made:

| Use tax accrued | (5% x $10,000) — $500.00 |
| Deduct: "Trade-in" | (5% x $2,000) — 100.00 |
| | |
| Use tax due Commonwealth | $400.00 |

This is, of course, a simplified example. Machine X may not be resold for many months. What actually takes place is that the cost and resulting use tax of machines turned over to "Road" in any given month will be offset by the "trade-ins" of machines purchased in other months.

trade or exchange within this Commonwealth in lieu of the whole or any part of the purchase price. For the purpose of this subsection (f), the amount allowed by reason of personal property actually taken in trade or exchange shall be considered the value of such property": 72 PS §3403-2(f)(2).

Appellant attempts, in the first instance, to justify its method of computation, as above set forth, by arguing that the statute must be construed as taxing only that portion of the machines which is actually "consumed"; that the amounts received upon resale represent the portion not "consumed" by appellant; and that the proper "purchase price" to which the tax percentage is to be applied is the cost of the machine less the amount received on resale. With this contention we cannot agree. The statute is clear that, except where there is an allowable "trade-in" deduction under section 2(f)(2), the tax is to be computed on the total cost of the machine without regard to the portion actually "consumed" by the user.

We turn, therefore, to section 2(f)(2) of the act, as set out above, in order to determine whether or not appellant may properly avail itself of the "trade-in" allowance in the manner in which it has attempted. Appellant contends that the turning over of new machines from "Jobbing" to "Road" for placement and the return of old machines from "Road" to "Jobbing" for resale be viewed as *inter*-company, rather than *intra*-company, transfers. It is suggested that because the partnership treats the divisions on its books as separate companies, the Commonwealth is bound to do the same. The result would be that when "Road" turns in a used machine to "Jobbing" and receives a new one, there would be a "trade-in" within the meaning of section 2(f)(2).

To support its contention, appellant cites a number of Pennsylvania decisions involving the doctrine

of multiformity,[2] and argues that it is entitled, for tax purposes, to have its "Road" and "Jobbing" divisions treated as separate entities. We are of the opinion that appellant is not entitled to such treatment and find it unnecessary to decide whether such a concept can be applied to this provision of the sales and use tax.

The doctrine of multiformity developed and achieved its very limited application by the courts almost entirely in cases where it was needed to avoid an unconstitutional application of an otherwise constitutional State statute to an out of State corporation. The leading case in Pennsylvania is Commonwealth v. Columbia Gas and Electric Corporation, 336 Pa. 209 (1939). Columbia and later cases relying upon it granted multiform treatment to *foreign corporations* whose in-State functions were as unrelated to their out-of-State activities that to apply the tax (franchise) to a base which included out-of-State activities or assets would have been unconstitutional: Commonwealth v. The Mundy Corp., 346 Pa. 482 (1943); Commonwealth v. The Baker-Whiteley Coal Company, 74 D. & C. 13, 60 Dauph. 434 (1950), exceptions dismissed, 62 Dauph. 207 (1951). The doctrine in Pennsylvania has been strictly limited to a narrow factual setting involving: (1) foreign, (2) corporations, (3) doing business in Pennsylvania, (4) which Pennsylvania business is completely unrelated to business carried on elsewhere and (5) as a result of which to include income or property of the foreign business in the base of the corporation's tax in Pennsylvania would be unconstitutional. Only one case has departed from this pattern and that involved

---

[2] Because of the decision reached on the issue of multiform or similar treatment in this case, we find it unnecessary to consider the Commonwealth's objections as to the right of appellant to raise such issue at this time.

a *foreign corporation* carrying on two separate activities in Pennsylvania which was afforded multiform treatment: Commonwealth v. Interstate Amiesite Corp., 79 Dauph. 11 (1961), vacated 412 Pa. 180 (1963). The court there was careful to note at page 16 that "The instant case does not involve the principle and factual issue of multiformity . . . . . Nevertheless, under the stipulation of the parties the principle with which we are here concerned is the same. . . ." Likewise, in this case we are faced with the same principle and must deal with it accordingly. It is clear that appellant's case falls outside the normal application of the principle. Appellant is, first of all, a domestic business, and secondly, a non-corporate entity. This court has found no cases, Pennsylvania or otherwise, which extend the doctrine of multiformity or any analogous principle to partnerships. Even if, however, we assume that the doctrine can properly apply to a domestic, non-corporate entity, appellant cannot qualify for such treatment in this case, since appellant's activities, far from being separate and multiform, are in fact inter-related and unitary. This conclusion conforms with those cases which, while upholding the doctrine of multiformity in theory, have denied such treatment to foreign corporations because the assets of the foreign division contributed to the benefits received by the in-State division, thus rendering the business unitary: Commonwealth v. American Telephone and Telegraph Company, 382 Pa. 509 (1955); Commonwealth v. Quaker Oats Company, 350 Pa. 253 (1944); Commonwealth v. Minnesota Mining & Manufacturing Co., 23 D. & C. 2d 337, 73 Dauph. 223 (1959), affirmed 402 Pa. 612 (1961); Commonwealth v. The L. D. Caulk Co., 11 D. & C. 2d 218, 69 Dauph. 289 (1956); Commonwealth v. Baxter, Kelly & Faust, Inc., 53 Dauph. 73 (1942); Commonwealth v. Ford Motor

Company, 51 Dauph. 149 (1941), affirmed 350 Pa. 236 (1944).

In Commonwealth v. L. D. Caulk Co., supra, at 223, this court said:

"A corporation may be said to be carrying on a unitary enterprise where the component parts of its business are too connected and necessary to each other to justify separate consideration as independent units. Where a corporation is engaged in several projects which enable it to derive benefits from them that are not inherent in any of the projects when standing alone, the enterprise is unitary . . . Multiformity in business activity exists where two separate and segregated enterprises are not related to each other and are conducted as separate and independent units, and the corporation derives benefits from each independent unit that are not related to the operation of the other units".

In the case at bar, appellant's two divisions work hand in hand. The basis of appellant's claim, in fact, is that one division was acting in cooperation and as an integral unit with the other. This in itself is contradictory to the theory of multiformity. The fact that separate books are maintained for each division is neither controlling nor highly persuasive. There is no evidence that these divisions are really separate businesses. They are both owned by the same persons and under the same management. The activities carried on and the contributions to the partnership as a whole by each division are so inter-related and interdependent that the partnership must be viewed as a unitary business. Upon reaching this conclusion, it becomes clear that deduction under 2 (f) (2) is not permissible in any event. This makes unnecessary any further interpretation of that section and the nature of the trade-in allowance.

One further argument advanced by appellant bears discussion. Appellant complains that the partnership

is being "adversely affected in its competition" with companies carrying on these activities separately and that this constitutes a taking of property without due process of law in violation of the 14th Amendment of the United States Constitution and the uniformity provision of the Pennsylvania Constitution, article IX, sec. 1. We find this argument to be without merit. The statute imposes the tax equally on all businesses. Appellant enjoys benefits as a single partnership, which other companies, separately formed, do not. Moreover, it is free to organize in a manner which would result in two separate entities. Merely because it has not chosen to do so, it cannot thereby render the resulting tax inequality unconstitutional.

"Absolute or perfect equality and uniformity in taxation, being impossible of attainment, is not required, and as long as there is substantial uniformity in the application of taxing statutes, it has been held that the constitutional provisions relating to equality and uniformity are not violated. (A) taxing statute is not invalid . . . because conditions may be thought of which would seem to involve differences and inequalities, nor is a tax statute unconstitutional because in its practical application it may work to the advantage or disadvantage of persons or corporations organized and doing business, although in the same line, in different capacities, under other general or special law . . . (U)navoidable inequalities . . . in business conditions and activities are not sufficient to render a tax statute invalid": 84 C. J. S. §23, Taxation, at 82-83 (1954), citing numerous cases, including State of New Jersey v. Anderson, 203 U. S. 483, 490 (1906); Allentown School District Mercantile Tax Case, 370 Pa. 161, 170 (1952).

Appellant has chosen to operate as a single partnership and obviously enjoys certain advantages by doing so. It cannot, for tax purposes, seek to be treated as if it were two separate entities.

Accordingly, we make the following:

ORDER

And now, August 2, 1966, the within appeal is denied and the decision of the Board of Finance and Revenue, dated April 5, 1963, reassessing and imposing sales and use tax against appellant herein for the period January, 1958 to December, 1960, in the amount of $5,439.91, plus applicable interest as provided by law, is sustained, except for that portion of the use tax deficiency contained therein in the amount of $1,228.45 attributable to purchase of inventory items, which the Commonwealth agrees shall be stricken from the overall assessment. Accordingly, judgment is directed to be entered in favor of the Commonwealth and against Benjamin Sterling, Jr. and Mae Sterling, d/b/a Sterling Service, in the amount of $4,211.46, which total is comprised of sales tax admitted due in the amount of $3.75, the remaining use tax deficiency on inventory items in the amount of $1,180.27 and the use tax deficiency attributable to disallowance of claim for credit on "trade-in" allowance in the amount of $3,027.44, unless exceptions are filed hereto within 30 days. Appellant having heretofore paid $5,512.99 on account of this assessment, the judgment entered pursuant to this Order shall be marked "paid". Interest shall be recomputed on the basis of tax due in the amount of $4,211.46 as determined herein. The difference between the tax due in the amount of $4,211.46 and the amount of $5,512.99 heretofore paid by appellant on account of this assessment shall be applied to the payment of interest, with appropriate credit to be established by the Commonwealth in favor of appellant if there has been any overpayment.

The prothonotary is directed to give notice of this order to the parties or their counsel forthwith.