## Commonwealth *v.* Tube City Iron & Metal Company, Appellant.

Argued May 21, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert D. Myers,* with him *Frank A. Sinon,* and *Rhoads, Sinon and Reader,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, with him *William C. Sennett,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE COHEN, November 27, 1968:

Tube City Iron and Metal Company (appellant) is a Pennsylvania corporation with its headquarters in this Commonwealth. Its business, both as expressed in its corporate charter and as evidenced by its actual operations, was dealing in scrap metal.

Around 1952 appellant acquired a scrap metal yard in West Virginia in payment of a debt due it and, as required by that state's laws, qualified to do business there as a foreign corporation. Since that time it regularly filed West Virginia Business and Occupation Tax Reports and Corporate License Tax Reports. However, at no time did it operate this scrap yard. Rather, from June 1, 1952, to November 1, 1954, and again from August 15, 1955, to September 30, 1961, it leased the real estate to other companies. Both of the lessees carried on a scrap metal business at the yard and sold all their scrap accumulations to appellant. In addition, appellant subsidized the lessees' operations by advancing money to the lessees.

On September 15, 1961, the scrap metal business at the West Virginia yard ceased. Thereafter, appellant made strenuous efforts to sell the property and finally

did so on April 21, 1964, at a considerable capital gain. This sale has produced the present dispute.

As a Pennsylvania corporation, appellant regularly filed Pennsylvania Corporate Net Income Tax returns. From 1952 through 1961 it claimed use of the three allocation fractions and regularly allocated outside of Pennsylvania the value of the West Virginia real estate in computing its tangible property fraction and the amount of rental receipts in computing its gross receipts allocation fraction. These allocations were accepted each year by the Commonwealth's taxing departments in settling appellant's corporate net income taxes.

In 1962 appellant states it did not use the allocation fractions because its income was too small to warrant such use. In 1963 it had no need to use the fractions because it operated at a loss. However, for its fiscal year ended September 30, 1964 (the year in which the sale of the property occurred) appellant again claimed its right to allocate and not only computed the three factors (excluding the value of the real estate from the numerator of the property fraction and the receipts from the sale of the property from the numerator of the gross receipts fraction), but also, more significantly, excluded from its Pennsylvania net income all of the gain from the sale of the property since such gain arose from the sale of a capital asset situated outside the Commonwealth.

In settling appellant's corporate net income tax for the year ended September 30, 1964, the taxing departments denied appellant's right to use the allocation fractions and simply taxed all of appellant's income, including the gain from the sale of the West Virginia property, at the statutory tax rate of 6%. Appellant protested and eventually appealed to the lower court.

The lower court held in favor of the Commonwealth on the ground that "holding real estate for investment

purposes does not amount to doing business" in West Virginia. Since appellant could not use the allocation factors unless it was "doing business" outside Pennsylvania, said the court, all of its income was taxable by Pennsylvania.

The Corporate Net Income Tax Act of May 16, 1935, P. L. 208, §3, as amended, 72 P.S. §3420c, imposes a state excise tax on corporations *"for the privilege of doing business in this Commonwealth. . . ."* The tax is imposed at a specified rate on "net income". "Net income" is defined as the amount of taxable income reported to the federal government. However, in order to provide for a proper apportionment of income to Pennsylvania where the tax-paying corporation carries on its business activities both here and in other jurisdictions, the Act, §2b, 72 P.S. §3420b, goes on to permit apportionment *"In case the entire business of any corporation . . . is not transacted within this Commonwealth. . . ."* By this language a statutory condition precedent to apportionment is established, and it is the meaning of this language and its application to the facts of this case that are raised in this appeal.

Appellant argues, first, that in order to apportion its income it need not be "doing business" elsewhere in the technical sense of that word as employed by the court below and the Commonwealth. It contends that its ownership of tangible property in West Virginia and its derivation of receipts therefrom are sufficient to indicate that not all of its business is "transacted" in Pennsylvania. In so contending, it points to the obvious difference in wording contained in the section imposing tax "for the privilege of doing business" and the apportionment section which uses completely different phraseology.

Second, appellant argues that in any event it was "doing business" in the technical sense in West Vir-

ginia. Here, it points to the connection between its ownership of the West Virginia real estate and the conduct of its Pennsylvania operations—i.e., the maintenance of a source of supply of scrap to it. In this context appellant objects to the lower court's characterization of its West Virginia activity as "a passive investment in real estate."

The exact issue posed by this case has not previously been before our Court despite its obvious importance to the proper administration and interpretation of the Corporate Net Income Tax Act. Therefore, precedents are lacking,[1] and we must approach our decision through the statute itself. In so doing, we are guided by the similar analysis undertaken by our Court in the analogous case of *Commonwealth v. Rieck Investment Corporation*, 419 Pa. 52, 213 A. 2d 277 (1965). The facts of that case bear repeating.

---

[1] See Stradley and Krekstein, *Corporate Taxation and Procedure in Pennsylvania*, (Second Edition, 1952), Commerce Clearing House, Inc., Chicago, Illinois, p. 301, where the following interesting discussion of this problem appears:

"It is significant to observe that the . . . Act grants the right of allocation to only those taxpayers whose 'entire business . . . is not transacted within this Commonwealth.' At one time the Department interpreted this to mean that only those corporations which were 'doing business' in a jurisdiction outside of Pennsylvania were entitled to the benefits of the allocations and apportionments provided in the Act. The question of what constituted 'doing business' was based upon the same rules that applied in determining liability of a foreign corporation to the Franchise and Corporate Net Income Tax in Pennsylvania.

"This interpretation was contested and before the issue was presented to the courts, the Department abandoned its original position. As the matter now stands the words 'business transacted' are given a broader interpretation than 'doing business' on the theory, probably, that had the legislature intended to apply the test of 'doing business' in the strict technical sense, those exact words would have been used rather than those appearing in the Statute."

Rieck Investment Corporation (Rieck) was a Delaware corporation authorized to do business in Pennsylvania. As such, it was liable for Pennsylvania franchise tax. In submitting its franchise tax report for 1956, Rieck excluded from the numerator of its tangible property fraction the value of two vacant lots owned by it and located in the State of Florida. These lots produced no income and Rieck was not otherwise transacting any business in Florida. The Commonwealth, claiming that the franchise tax apportionment formula[2] was available only if a taxpayer was "doing business" in a state or states other than Pennsylvania, removed the value of these lots from the fraction.[3]

We referred to the language of the franchise tax statute itself, Act of June 1, 1889, P. L. 420, §21, as amended, 72 P.S. §1871, to settle the issue. That particular statute applied to all foreign corporations and placed no condition whatsoever upon the use of the apportionment formula. That is, use of the formula was not restricted to corporations doing business outside of Pennsylvania. Since the formula provided for allocation of all owned real estate in or out of Pennsylvania, Rieck was correct in its allocation.

Just as we did in the *Rieck* case, therefore, we turn to the statute—this time, the Corporate Net Income Tax Act, supra. As noted above, this Act does contain a condition upon the use of the apportionment formula, one which requires that not all of the corporation's

---

[2] This formula is identical to that contained in the Corporate Net Income Tax Act.

[3] Since the lots were actually located outside Pennsylvania, the Commonwealth could not include their value in the numerator of the fraction. Rather, it took the position that the property played no part at all in the exercise by the corporation of its Pennsylvania franchise; and, therefore, it excluded the value of the property from both parts of the fraction.

business be "transacted" within Pennsylvania. We are struck immediately with the deliberate use of a phrase other than "doing business" in this provision of the Act; whereas in the provision imposing tax, the phrase "doing business" is used. Such a juxtaposition of contrasting language in a carefully drawn tax statute cannot be considered a mere accident; and in applying the same settled principles of statutory construction as we did in *Rieck*, 419 Pa. 52, 59-60, 213 A. 2d 277, 281-282, we can only conclude that the legislature did not impose a requirement that a corporation be "doing business" in the technical sense of that phrase in order to apply the corporate net income tax apportionment formula.

Apart from the matter of statutory interpretation, we believe this distinction is supported by reasonable considerations of taxing policy. While an excise tax imposed for "the privilege of doing business" in Pennsylvania follows well-recognized and traditional language carefully defining the incidence of a tax on corporations carrying on some intrastate business in Pennsylvania,[4] language relevant to apportionment serves a different purpose. The fractions are designed to limit the measure of tax to an amount of income fairly representing what is attributable to Pennsylvania business activities.[5] Therefore, to the extent income may be considered partly or wholly attributable to activity outside of Pennsylvania, we view the Corporate Net Income Tax Act as striving for an equitable apportionment of such income without Pennsylvania.

---

[4] Compare the language of the Corporate Net Income Tax Act, supra, with that of the "Corporation Income Tax Law," (Act of August 24, 1951, P. L. 1417, 72 P.S. §§3420n-1 to 3420n-12), imposing a property tax on the net income of corporations carrying on a wholly interstate business.

[5] *Commonwealth v. Koppers Co.*, 397 Pa. 523, 156 A. 2d 328 (1959), cert. dismissed, 364 U.S. 286, 81 S. Ct. 43, 5 L. ed. 2d 38 (1960).

In addition, we have further difficulty with the lower court's position on this point. While the question of whether or not a company is "doing business" in Pennsylvania so as to subject it to tax in the first instance is certainly a matter of Pennsylvania law,[6] an interpretation of the apportionment formula condition as involving a "doing business" concept does not easily lead to a similar conclusion. For example, it is agreed in the present case that appellant has qualified to do business in West Virginia and pays West Virginia privilege taxes. Would we determine the question, therefore, by West Virginia's view of what constitutes "doing business" or by Pennsylvania's view? We do not believe that our legislature intended to impose the making of such distinctions upon either our tax administrators or our courts. Rather, we believe the language chosen was deliberately selected to impose a practical test, one based upon factual considerations rather than legal ones.

Turning, therefore, to the facts here, we find that the parties have agreed to all material matters. Far from showing that the property was simply "a passive investment in real estate," these facts show that appellant actively turned the real estate into a valuable adjunct of its Pennsylvania business by leasing it only to operators who served appellant's business needs. We would agree that an interest in real estate located outside of Pennsylvania which involved no more than the holding of it in the fashion pursued by *Rieck* would be inadequate to meet the statutory test for corporate net income tax purposes. On the other hand, no one could dispute that the test was met if appellant here were itself operating the scrap yard in West Virginia. In fact, appellant did neither; what it

---

[6] Any such determination, of course, is subject to constitutional limitations.

did do, however, was to integrate its ownership of the property into its regular business activities and to insure that this ownership would not be a mere "passive investment."

We believe the true test is whether or not the corporation's outside presence is related to its actual business activity.[7] Where that presence is evidenced by tangible property owned by a taxpayer and used in a way which meets a need of its business, we find no requirement that the taxpayer itself must be physically conducting operations on or with the property. Therefore, we believe that the operation of a scrap yard on appellant's West Virginia real estate under arrangements dictated by appellant and for appellant's benefit is sufficient to characterize appellant's ownership and leasing of the real estate as the transaction of business outside of Pennsylvania within the meaning of the Corporate Net Income Tax Act.

There remains one additional factor of importance, however. The tax settlement before us involves the year ended September 30, 1964. The stipulated facts indicate that all scrap metal operations conducted on the real estate ceased in 1961 and that thereafter appellant's only use of the real estate was in attempting to sell it. Appellant attempts to avoid the implications of these facts by arguing that those attributes which characterized use of the property in earlier years carried over to the year ended September 30, 1964, and by citing *Commonwealth v. Weirton Steel Co.*, 277 Pa.

---

[7] It is this factor which distinguishes this case from *Commonwealth v. Truck Rental Co.*, 75 Dauph. 106 (1960), cited by the Commonwealth. In this latter case the presence of Truck Rental's equipment outside of Pennsylvania was not related to any business activity conducted by the taxpayer. Rather, its presence outside of Pennsylvania arose from the strictly fortuitous (as far as Truck Rental was concerned) fact that Truck Rental's lessees took it there.

6, 120 Atl. 663 (1923), in support of its contention. However, that case referred only to property acquired and held for *future* business use, not property previously used and now held only for the purpose of disposing of it. Consequently, in the year before us, appellant's ownership of the property was not tied to its regular business activity in any way and does not satisfy the condition of the Corporate Net Income Tax Act. For this reason appellant cannot properly use the apportionment formula in computing its tax, and the settlement was proper.

The judgment of the court below is affirmed.

Mr. Justice MUSMANNO did not participate in the decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Although I agree with much of the reasoning of the majority opinion, I must dissent from its ultimate conclusion that because appellant's property was a "passive investment," it was not "transacting business" within the statute.

I fully agree that the phrase "transacting business" must be given a much broader meaning than "doing business," especially in light of the obvious statutory intent to make an equitable apportionment for income earned outside of Pennsylvania. Starting from this rationale, I believe it is clear that the income need not necessarily be related to appellant's *"regular* business activity"* (emphasis added) as the majority would require. Obviously the West Virginia income was earned as a part of appellant's business. Appellant made its investment in West Virginia in order to earn money. Corporations are set up to transact business and earn money, and I do not believe that what type of business they are doing or what type of income they are earning is relevant to determining whether they

are entitled to use the income tax apportionment formula.

Requiring the out-of-state activity to be part of appellant's "regular" business merely brings in most of the inapplicable "doing business" test through the back door. This ignores the fact that the need for equitable apportionment is equally great whether the income from out-of-state is earned passively or actively, as part of appellant's regular or "nonregular" business.