Peoples Gas System, Inc., Appellant, *v.* Commonwealth of Pennsylvania, Board of Finance and Revenue, Appellee.

Argued September 7, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, MENCER, ROGERS and BLATT. Judge WILKINSON, JR. did not participate.

*David H. Rosenbluth,* with him *Lane Taylor, Jr.* and, of counsel, *Stradley, Ronon, Stevens & Young,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, for appellant.

OPINION BY JUDGE KRAMER, January 18, 1974:

This is an appeal by Peoples Gas System, Inc. (Peoples) from three orders of the Board of Finance and Revenue (Board) refusing Peoples' petitions for review of its corporate net income tax, corporation income tax, and foreign franchise tax for the year ending December 31, 1966.

Peoples contends that it is "doing business" within Pennsylvania, and therefore is subject to taxation under the Foreign Franchise Tax Act* (FFTA), Act of June 1, 1889, P. L. 420, as amended, 72 P.S. §1871(b) et seq., and the Corporate Net Income Tax Act* (CNITA), Act of May 16, 1935, P. L. 208, as amended, 72 P.S. §3420a et seq. If Peoples is subject to the CNITA tax, it is not subject to taxation under the Corporation Income Tax Law,* Act of August 24, 1951, P. L. 1417, as amended, 72 P.S. §3420n-1 et seq., nor would its shareholders be liable for county personal property taxes.

The Commonwealth contends that Peoples is not "doing business" within Pennsylvania so as to subject it to taxation under the FFTA and the CNITA. Concomitantly, the Commonwealth urges that Peoples' activities within Pennsylvania are sufficient to subject it to the Corporation Income Tax Law.

The parties have submitted a stipulation of facts which is accepted and made a part hereof by reference thereto. A summary of the pertinent facts follows:

---

*Repealed by the Tax Reform Code of 1971, Act of March 4, 1971, P. L. 6, 72 P.S. §7101 et seq.

Peoples is a Florida corporation with general offices in North Miami. Peoples processes and supplies natural and artificial gas to residents of the Miami and Tampa areas of Florida.

Peoples has been qualified by the Commonwealth to do business in Pennsylvania since 1965. It does not render any public utility services in Pennsylvania. In 1965, Peoples rented office space in Philadelphia, pursuant to a written lease providing for an annual rental of $1,200. Peoples' name appears on the building directory in the lobby of the building in which it rents space. Since 1966, Peoples has been listed in both the white pages and yellow pages of the Philadelphia telephone directories; its annual reports have listed the Philadelphia office, and all annual shareholders' meetings have been held in Philadelphia.

One of four meetings of Peoples' Board of Directors held in 1966 took place in Philadelphia. Four of the five Executive Committee meetings held in 1966 were held in Philadelphia.

Peoples utilized 13 banks in 1966, twelve of which were located in Florida. The remaining bank was located in Philadelphia. The Florida bank accounts were used as temporary depositories for funds collected from local operations. Twice a week, these funds were transferred to Peoples' bank account in Pennsylvania. During 1966, Peoples had two outstanding loans, both of which were with the Pennsylvania bank. The Pennsylvania bank also served as Peoples' stock transfer and dividend disbursing agent.

Andrew B. Young was the only Peoples' employe residing in Pennsylvania during 1966. Young was a member of both the Board of Directors and the Executive Committee; he also served as Peoples' Secretary-Treasurer. His duties included reviewing semiweekly reports of staff meetings held in Florida, as well as reviewing monthly financial and sales reports. Young

was in frequent telephone communication with Florida personnel concerning these aforementioned matters. In addition to Young, one other member of the Executive Committee and two other members of the Board of Directors resided in Philadelphia during 1966.

Peoples filed tax returns for the year ending December 31, 1966, showing corporate net income tax of $58.98 and franchise tax of $49.25 as due, which amounts were paid. The Department of Revenue settled Peoples' corporate net income tax and franchise tax at zero. At the same time, the Department assessed Peoples corporation income tax at $58.98. Peoples petitioned for resettlement of all three taxes. The resettlement petitions having been refused, Peoples petitioned the Board for review. The Board refused said petitions on September 11, 1968, and Peoples appealed to the Court of Common Pleas of Dauphin County. The appeals were subsequently transferred to this Court. With these facts in mind, we now turn to the merits of the case.

The matter before us appears to be controlled by *Commonwealth v. Mississippi Central R. R. Co.*, 70 Dauph. 47 (1956), which if followed would necessitate the affirmance of the Board's orders. Peoples urges that *Mississippi Central, supra*, is "old law" and that we rely instead on a line of "parallel" cases. Peoples points to several cases dealing with the concept of "transacting business." This concept is used in conjunction with the apportionment formula for the purpose of computing the corporate net income tax, once it has been established that the corporation in question is "doing business" within Pennsylvania. We are of the opinion that these cases are not applicable.

Our Supreme Court in *Commonwealth v. Tube City Iron & Metal Co.*, 432 Pa. 600, 248 A. 2d 225 (1968) stated:

"As noted above, this Act [CNITA] does contain a condition upon the use of the apportionment formula,

one which requires that not all of the corporation's business be 'transacted' within Pennsylvania. We are struck immediately with the deliberate use of a phrase other than 'doing business' in this provision of the Act; whereas in the provision imposing tax, the phrase 'doing business' is used. Such a juxtaposition of contrasting language in a carefully drawn tax statute cannot be considered a mere accident; and in applying the . . . settled principles of statutory construction . . . we can only conclude that the legislature did not impose a requirement that a corporation be 'doing business' in the technical sense of that phrase in order to apply the corporate net income tax apportionment formula.

"Apart from the matter of statutory interpretation, we believe this distinction is supported by reasonable considerations of taxing policy. While an excise tax imposed for 'the privilege of doing business' in Pennsylvania follows well-recognized and traditional language carefully defining the incidence of a tax on corporations carrying on some intrastate business in Pennsylvania, language relevant to apportionment serves a different purpose. The fractions are designed to limit the measure of tax to an amount of income fairly representing what is attributable to Pennsylvania business activities." (Footnotes and citation omitted.) 432 Pa. at 606-607, 248 A. 2d at 229. *See also Commonwealth v. Hellertown Manufacturing Company,* 438 Pa. 134, 264 A. 2d 382 (1970).

The distinction announced by the Supreme Court is clear; "transacting business" is not another way of saying "doing business." In *Commonwealth v. Mississippi Central R. R. Co., supra,* the court stated:

"Generally, a foreign corporation is 'doing business' in Pennsylvania, when it has agents here, is doing a substantial part of its ordinary business here, employs capital here, and carries out its charter purposes here.
. . .

"The certificate of authority is no proof of the doing of business, since it is more or less a self serving declaration. However, the certificate of authority in this case, see above, specifically states that the corporation does not intend to own, lease or operate a railroad here. The office was to be maintained for its transactions in interstate commerce. There is nothing in the record to show such transactions, or at least, the showing is de minimis, and not a substantial part of the corporation's customary business.

" 'Registration, without more, does not cause a corporation to become liable for a state tax.' . . .

"The mere maintenance of an office in this state does not constitute the doing of business. . . .

"The maintenance of a bank account and the drawing of checks, standing alone, does not constitute the doing of business. . . .

"The holding of Directors' meetings, in this state is not alone enough to constitute the doing of business. . . .

"The keeping of a stock record, issuing certificates of stock, paying interest, dividends or sinking fund charges are matters of internal management, not the employing of capital or the doing of business. . . .

"A few isolated instances of purchasing equipment or approving leases are insufficient to constitute the doing of business.

"The appellant relies upon Com. v. Wilkes-Barre & Hazleton R. R. Co., 251 Pa. 6. That case involved many of the elements of the present one, but it involved more. There the corporation bought 'the stocks and bonds of the Pennsylvania corporations as one of the direct objects of its incorporation' (p. 11). Hence it was unquestionably carrying out its charter purpose, employing its capital and engaged in doing business. The same is true of Com. v. American Gas Co., 352 Pa. 113, for there the corporation was conducting a holding company

business (p. 114); and of Callery's Appeal, 272 Pa. 255, involving a personal property tax where the corporation, though doing a holding company business here had no tangible property here to tax.

"The case of Com. v. Tonopah & Goldfield R. R. Co., 17 Dauphin 261, is very similar to the case at bar. There a corporation operated a railroad in Nevada but had an office in Pennsylvania which performed acts almost identical with those performed by the present appellant in Pennsylvania. It was held that they were not doing business in this State." 70 Dauph. at 48-50.

In light of the above, we conclude that Peoples was not "doing business" within Pennsylvania for the year ending December 31, 1966. Therefore, the Board's decisions are correct: Peoples owes no foreign franchise tax, nor any corporate net income tax. Likewise, since it is not subject to the CNITA, Peoples is liable for the corporation income tax.

We therefore

## ORDER

AND Now, this 18th day of January, 1974, the appeals of Peoples Gas System, Inc. from the refusal of the Board of Finance and Revenue to resettle its corporate net income, foreign franchise and corporation income taxes are dismissed; unless exceptions are filed within thirty (30) days of this order the Chief Clerk shall enter judgment in favor of the Commonwealth and against Peoples Gas System, Inc. in the amount of $58.98 for corporation income tax liability for the year ending December 31, 1966, and mark the same satisfied, said liability having been paid.