**[J-82A-2024 and J-82B-2024] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| FAITH GENSER AND FRANK MATIS | : | No. 26 WAP 2024 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Commonwealth Court entered |
| | : | September 5, 2024, at No. 1074 CD |
| | : | 2024, Reversing the Order of the |
| | : | Court of Common Pleas of Butler |
| BUTLER COUNTY BOARD OF | : | County entered August 16, 2024, at |
| ELECTIONS, REPUBLICAN NATIONAL | : | No. MSD-2024-40116. |
| COMMITTEE, REPUBLICAN PARTY OF | : | |
| PENNSYLVANIA, AND THE | : | |
| PENNSYLVANIA DEMOCRATIC PARTY | : | SUBMITTED:  September 26, 2024 |
| | : | |
| | : | |
| | : | |
| APPEAL OF: REPUBLICAN NATIONAL | : | |
| COMMITTEE AND REPUBLICAN PARTY | : | |
| OF PENNSYLVANIA | : | |
| | | |
| FAITH GENSER AND FRANK MATIS | : | No. 27 WAP 2024 |
| | : | |
| | : | Appeal from the Order of the |
| v. | : | Commonwealth Court entered |
| | : | September 5, 2024, at No. 1085 CD |
| | : | 2024, Reversing the Order of the |
| | : | Court of Common Pleas of Butler |
| BUTLER COUNTY BOARD OF | : | County entered August 16, 2024, at |
| ELECTIONS, REPUBLICAN NATIONAL | : | No. MSD-2024-40116. |
| COMMITTEE, REPUBLICAN PARTY OF | : | |
| PENNSYLVANIA, AND THE | : | |
| PENNSYLVANIA DEMOCRATIC PARTY | : | SUBMITTED:  September 26, 2024 |
| | : | |
| | : | |
| APPEAL OF: REPUBLICAN NATIONAL | : | |
| COMMITTEE AND REPUBLICAN PARTY | : | |
| OF PENNSYLVANIA | : | |

<u>**DISSENTING OPINION**</u>

**JUSTICE BROBSON**                              **DECIDED: OCTOBER 23, 2024**

Appellees Faith A. Genser and Frank P. Matis (Electors) cast provisional ballots at their respective polling places on April 23, 2024—the date of the Primary Election in Pennsylvania (Primary Election). The Butler County Board of Elections (Board) refused to count Electors' provisional ballots because the Board had received timely mail-in ballots from both Electors. The Board also did not count Electors' mail-in ballots, because Electors failed to place their mail-in ballots in the required secrecy envelopes. *See Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 380 (Pa. 2020) (holding "that a mail-in ballot that is not enclosed in the statutorily[ ]mandated secrecy envelope must be disqualified" and that "the mail-in elector's failure to comply with such requisite by enclosing the ballot in the secrecy envelope renders the ballot invalid"). Electors do not challenge the Board's decision not to count their mail-in ballots. The question before the Court is whether the Board was authorized under the Pennsylvania Election Code (Election Code)[1] to count Electors' provisional ballots under these circumstances.

On this question, the Election Code is clear and unambiguous. The Board not only lacked the authority to count Electors' provisional ballots, the Election Code expressly prohibited the Board from counting them: "A provisional ballot shall not be counted if[] . . . the elector's [mail][2] ballot is timely received by a county board of elections." Section 1210(a.4)(5)(ii)(F) of the Election Code, 25 P.S. § 3050(a.4)(5)(ii)(F). Because the Majority reaches the opposite conclusion, I respectfully dissent.

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2601-3591.

[2] Like the Majority, I use "mail ballot" to refer generally to both absentee and mail-in ballots given their similar treatment under the Election Code. For conciseness, and given the fact that Electors here submitted mail-in ballots and not absentee ballots, I cite only to the pertinent provisions of the Election Code for mail-in ballots.

## I. Relevant Provisions of the Election Code

Registered electors in Pennsylvania may vote in elections in one of two ways: (1) they may appear and vote in person at their voting district polling place on election day between the hours of 7 A.M. and 8 P.M.; or (2) they may vote by mail. Section 1306-D of the Election Code, 25 P.S. § 3150.16, prescribes the procedure by which electors vote a mail ballot. The elector voting by mail "shall . . . mark the ballot[,] . . . fold the ballot[, and] enclose and securely seal the same" in what is commonly referred to as a secrecy envelope. 25 P.S. § 3150.16(a). The elector must then place the secrecy envelope in a second envelope, commonly referred to as a declaration envelope, complete the required information on the declaration envelope, securely seal the declaration envelope, and mail or deliver the declaration envelope in person to the elector's board of elections. *Id.* Pursuant to subsection (c) of Section 1306-D, "a completed mail-in ballot must be received in the office of the county board of elections no later than [8] P.M. on the day of the primary or election." 25 P.S. § 3150.16(c).

Under subsection (b) of Section 1306-D of the Election Code, an "elector who receives *and votes* a mail-in ballot . . . shall not be eligible to vote at a polling place on election day." 25 P.S. § 3150.16(b) (emphasis added). The subsection goes on to describe how this election-day prohibition is administered. The district register[3] for each voting district "shall clearly identify electors who have *received and voted* mail-in ballots as ineligible to vote at the polling place." 25 P.S. § 3150.16(b)(1) (emphasis added).

---

[3] 25 Pa. C.S. § 1402 (relating to creation of district register for each election district). The Statewide Uniform Registry of Electors (SURE) system "is a 'single, uniform integrated computer system' maintained by the Pennsylvania Department of State." *In re Doyle*, 304 A.3d 1091, 1096 n.3 (Pa. 2023) (quoting 25 Pa. C.S. § 1222(c)). "All [county registration] commissions shall be connected electronically to the SURE system[,] . . . shall maintain their registration records in the system," and "shall be required to use the SURE system as its general register." 25 Pa. C.S. § 1222(c), (e). Each district record is generated from the county general register maintained in the SURE system. 25 Pa. C.S. § 1402(b)(2).

"[D]istrict election officers," the provision continues, "shall not permit electors who *voted* a mail-in ballot to *vote* at the polling place." *Id.* (emphasis added). Moreover, county boards of elections must maintain a record of, *inter alia*, "[t]he date on which the elector's completed mail-in ballot *is received* by the county board." Section 1307-D(b)(5) of the Election Code, 25 P.S. § 3150.17(b)(5) (emphasis added).

Subsection (b) of Section 1306-D of the Election Code gives additional options to electors who requested a mail ballot, but who nonetheless show up to vote at their polling place on election day. These options, however, only apply where the district register does not show the elector as "having voted." If the elector appears at the polling place and remits to the judge of elections the elector's mail ballot and declaration envelope "to be spoiled," then the elector will be permitted "*to vote* at the polling place." 25 P.S. § 3150.16(b)(3) (emphasis added). If, however, the elector does not remit the elector's mail-in ballot, the elector will be permitted only to "*vote* by provisional ballot" pursuant to Section 1210(a.4)(1) of the Election Code, 25 P.S. § 3050(a.4)(1). 25 P.S. § 3150.17(b)(2) (emphasis added).

The above statutory provisions clearly and unambiguously establish that an elector completes the act of voting either when the elector appears at the polling place and votes in person (by official or provisional ballot) or upon receipt by the county board of elections of the elector's mail ballot before the statutory deadline.[4] Whether that elector's vote is included in the official returns for a particular election is a separate question, which requires consideration of the direction given by the General Assembly to the county boards of elections in the Election Code.

---

[4] This conclusion is buttressed by the other provisions of the Election Code relating to how county boards of elections must handle mail ballots upon receipt and the pre-canvassing and canvassing process, which I discuss below.

Section 1210 of the Election Code, 25 P.S. § 3050, contains specific directives to county boards of elections on how to handle and determine whether to count provisional ballots cast in an election. Relevant here, subsection (a.4)(5)(i) provides:

> *Except as provided in subclause (ii)*, if it is determined that the individual was registered and entitled to vote at the election district where the ballot was cast, the county board of elections shall compare the signature on the provisional ballot envelope with the signature on the elector's registration form and, if the signatures are determined to be genuine, shall count the ballot if the county board of elections confirms that the individual did not cast any other ballot, including an absentee ballot, in the election.

25 P.S. § 3050(a.4)(5)(i) (emphasis added). Prior to the passage of what is commonly referred to as Act 77,[5] subclause (ii) included only five express circumstances, (A) through (E), under which county boards of elections were prohibited from counting a provisional ballot—*i.e.*, "[a] provisional ballot shall not be counted if . . . ." 25 P.S. § 3050(a.4)(5)(ii). Act 77, which greatly expanded the circumstances under which electors could vote by mail in Pennsylvania, added a sixth, (F):[6]

> (ii) A provisional ballot shall not be counted if:
>
> . . . .
>
> *(F) the elector's [mail] ballot is timely received by a county board of elections.*

25 P.S. § 3050(a.4)(5)(ii)(F) (emphasis added). This provision gives primacy to a timely received mail ballot over a provisional ballot cast on election day. To explain, an elector who requested and received a mail ballot may show up at the elector's polling place at 7 A.M. on election day to vote. The elector, however, does not produce the elector's mail ballot to be spoiled. To the contrary, the elector mailed the ballot into the county board of elections but was concerned that the ballot might arrive too late to be included in the count. A review of the district register does not reflect the elector as "having

---

[5] Act of October 31, 2019, P.L. 552, No. 77.

[6] Section 3.2 of Act 77.

voted"—*i.e.*, that the county board of elections had not yet received the elector's mail ballot. Under these circumstances, as explained above, the elector would be permitted to cast a provisional ballot. If, as the elector feared, the county did not receive the elector's mail ballot prior to 8 P.M. on election day, the elector's provisional ballot would be counted.[7] If, however, the county board of elections, before the polls close on election day, receives the elector's mail ballot, the county board of elections would be barred from including the provisional ballot in the official returns under Section 1210(a.4)(5)(ii)(F).

Of further importance to the question before the Court are the procedures county boards of elections must follow for the handling and canvassing of mail ballots, which are set forth in Section 1308 of the Election Code, 25 P.S. § 3146.8. At the outset, Section 1308(a) of the Election Code provides:

> The county boards of election, *upon receipt of official absentee ballots* in sealed official absentee ballot envelopes as provided under this article *and mail-in ballots* as in sealed official mail-in ballot envelopes as provided under Article XIII-D, shall safely keep the ballots in sealed or locked containers until they are to be canvassed by the county board of elections. An absentee ballot, whether issued to a civilian, military or other voter during the regular or emergency application period, shall be canvassed in accordance with subsection (g). A mail-in ballot shall be canvassed in accordance with subsection (g).

(Emphasis added.) Clearly, the above provision requires that, "upon receipt" of mail "ballots" *in their* "sealed . . . ballot envelopes," county boards of elections are to keep those "ballots" in sealed or locked containers until canvassing. *Id.* And, as noted above, county boards of elections are required to record the date of receipt for every mail ballot under Section 1307-D(b)(5) of the Election Code and, pursuant to Section 1306-D of the Election Code, ensure that the district register reflects receipt of the mail ballot, such that it is clear that the mail elector is no longer eligible to vote at the elector's polling place on

---

[7] This assumes the provisional ballot did not suffer from some other fatal defect that would prevent the county board of elections from including it in the election returns.

election day. Notably, however, there is no provision in the Election Code that authorizes county boards of elections, upon receipt of a mail ballot, to verify—or speculate about—whether the mail ballot will ultimately be included in the certified election returns. To reiterate, county boards of elections must (a) record the date on which they receive a mail ballot, (b) update the district register accordingly, and (c) keep the ballot in a sealed or locked container until the canvass.

Subsection (g) of Section 1308 of the Election Code sets forth the actual canvassing procedures that county boards of elections must follow. Preliminarily, the subsection distinguishes between the casting of ballots and the receipt of ballots. With respect specifically to military and overseas ballots, subsection (g)(1)(i) provides that said ballots "shall be canvassed in accordance with this subsection if the ballot is *cast*, submitted and *received* in accordance with the provisions of 25 Pa. C.S. Ch. 35 (relating to uniform military and overseas voters)." 25 P.S. § 3146.8(g)(1)(i) (emphasis added). With respect to all other forms of mail ballots "cast," subsection (g)(1)(ii) provides that they "shall be canvassed in accordance with this subsection if the [mail] ballot is *received* in the office of the county board of elections no later than [8] P.M. on the day of the primary or election." 25 P.S. § 3146.8(g)(1)(ii) (emphasis added). These provisions clearly establish the General Assembly's intent that mail ballots must be *both* "cast" by the voter and "received" timely by the proper county board of elections to be included in the canvass.

Section 1308(g)(1.1) and (2) of the Election Code, 25 P.S. § 3146.8(g)(1,1), (2), provides for the canvassing process to occur in two phases: (1) a pre-canvassing meeting, which may begin "no earlier than [7 A.M.] on election day to *pre-canvass all ballots received* prior to the meeting," followed by (2) a canvassing meeting, which may begin "no earlier than the close of polls on the day of the election and no later than the

third day following the election to begin canvassing [mail] ballots not included in the pre-canvass meeting."[8] (Emphasis added.) Both are mandatory, and the county board of elections must publicly post notice of each meeting at least 48 hours in advance. Pertinently, the Election Code expressly prohibits the disclosure of "the results of *any portion* of any pre-canvass meeting prior to the close of the polls." 25 P.S. § 3146.8(g)(1.1) (emphasis added). The canvassing meeting "shall continue until all [mail] ballots received prior to the close of the polls have been canvassed." 25 P.S. § 3146.8(g)(2).

Section 1308(g)(3), (4) of the Election Code, 25 P.S. § 3146.8(g)(3)-(4), directs the county boards of elections on how to conduct—*i.e.*, what to do during—the pre-canvass and the canvass:

> (3) When the county board meets to pre-canvass or canvass [mail] *ballots* under paragraphs (1), (1.1) and (2), *the board shall examine the declaration on the envelope of each ballot not set aside under subsection (d)*[9] and shall compare the information thereon with that contained in the "Registered Absentee and Mail-in Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File," whichever is applicable. If the county board has verified the proof of identification as required under this act and is satisfied that the declaration is sufficient and the information contained in the "Registered Absentee and Mail-in Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File" verifies his right to vote, *the county board shall provide a list of the names of electors whose [mail] ballots are to be pre-canvassed or canvassed.*

---

[8] *See also* Section 102 of the Election Code, 25 P.S. § 2602 (definitions of "canvass" and "pre-canvass").

[9] Section 1308(d) of the Election Code, 25 P.S. § 3146.8(d), provides:

> Whenever it shall appear by due proof that any absentee elector or mail-in elector who has returned his ballot in accordance with the provisions of this act has died prior to the opening of the polls on the day of the primary or election, the ballot of such deceased elector shall be rejected by the canvassers but the counting of the ballot of an absentee elector or a mail-in elector thus deceased shall not of itself invalidate any nomination or election.

(4) All absentee *ballots* which have not been challenged under [S]ection 1302.2(c) [of the Election Code, 25 P.S. § 3146.2b(c),[10]] and all mail-in *ballots* which have not been challenged under [S]ection 1302.2-D(a)(2) [of the Election Code, 25 P.S. § 3150.12b(a)(2),[11]] and that have been verified under paragraph (3) *shall be counted and included with the returns of the applicable election district as follows*:

(i) The county board shall open the envelope of every unchallenged absentee elector and mail-in elector in such manner as not to destroy the declaration executed thereon.

(ii) If any of the envelopes on which are printed, stamped or endorsed the words "Official Election Ballot" contain any text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the elector's candidate preference, the envelopes and the ballots contained therein shall be set aside and declared void.

(iii) The county board shall then break the seals of such envelopes, remove the ballots and count, compute and tally the votes.

(iv) Following the close of the polls, the county board shall record and publish the votes reflected on the ballots.

(Emphasis added.)

To summarize, upon convening the pre-canvassing meeting and the canvassing meeting, the county boards of elections are required first to examine the declaration envelope of the ballots that have not already been set aside under Section 1308(d) of the Election Code (relating to deceased electors) in order to verify the identity of the elector, the sufficiency of the declaration, and the elector's right to vote. 25 P.S. § 3146.8(g)(3). The Election Code then directs county boards of elections to compile a list of electors whose mail ballot declarations survive this initial screening and, as a consequence, whose mail ballots will proceed to the next portion of the pre-canvass or canvass. *Id.*

---

[10] Section 1302.2(c) of the Election Code, 25 P.S. § 3146.2b(c), pertains to challenges to the approval of absentee voter applications, which challenges "may be made only on the ground that the applicant was not a qualified elector" and "must be made to the county board of elections prior to [5 P.M.] on the Friday prior to the election."

[11] Section 1302.2-D(a)(2) of the Election Code, 25 P.S. § 3150.12b(a)(2), pertains to challenges to the approval of mail-in voter applications, which challenges are subject to the same requirements listed *supra* at footnote 10 relative to challenges to the approval of absentee voter applications.

Pertinently, the next portion of the pre-canvass and canvass applies to "[a]ll [mail] ballots" that have not been challenged on the bases of Sections 1302.2(c) and 1302.2-D(a)(2) of the Election Code, relating to the approval of absentee voter and mail-in voter applications, respectively, and that have been verified under Section 1308(g)(3) of the Election Code. 25 P.S. § 3146.8(g)(4). At this point in the process, however, any actual, specific ballot is still in the declaration envelope, which has not yet been opened. Accordingly, when the General Assembly in this provision refers to "all [mail] ballots," it is referring to the sealed declaration envelope and its contents (whatever they may be). Of this universe of mail ballots, the Election Code commands the county boards of elections to follow the following procedures.

First, with respect to each such mail ballot, the county board of elections opens the declaration envelope in a manner that does not destroy the declaration thereon. 25 P.S. § 3146.8(g)(4)(i). Then, the county board of elections checks for the presence of a secrecy envelope and whether the secrecy envelope contains any prohibited "text, mark or symbol" and, if the secrecy envelope is missing or contains prohibited information, the county boards of elections are to set aside the mail ballot and declare it void. 25 P.S. § 3146.8(g)(4)(ii); *see Pa. Democratic Party*, 238 A.3d at 380. Second, and lastly, with respect to the remaining mail ballots that have not been disqualified up to this point, the county board of elections is directed to break the seals of the secrecy envelopes, remove the ballots, and "count, compute and tally" the votes. 25 P.S. § 3146.8(g)(4)(iii).

## II. The Present Matter

As noted above, and it is undisputed, Electors requested and received mail ballots from the Board for purposes of voting in the Primary Election. Electors, however, failed to follow the proper procedure for casting those mail ballots as provided in Section 1306-D(a) of the Election Code, as they failed to enclose their mail ballots in

secrecy envelopes before depositing them in the declaration envelopes, completing the required information on those outer envelopes, and mailing them to the Board. Electors' failure to place their mail ballots in secrecy envelopes rendered their mail ballots invalid during the canvass, and, thus, the Board did not count those ballots. *See Pa. Democratic Party*, 238 A.3d at 380 (holding "that a mail-in ballot that is not enclosed in the statutorily[ ]mandated secrecy envelope must be disqualified" and that "the mail-in elector's failure to comply with such requisite by enclosing the ballot in the secrecy envelope renders the ballot invalid").

It is further undisputed that the Board received Electors' completed mail ballots before 8 P.M. on the day of the Primary Election—*i.e.*, the ballots were timely received by the Board under Section 1306-D(c) of the Election Code. The Majority emphasizes Section 1306-D(c) of the Election Code's reference to receipt of a "completed" ballot by 8 P.M. on election day. (Maj. Op. at 42.) "Completed," the Majority reasons, must "mean that the mandatory requirements for voting by mail-in ballot . . . have been completed"— referring, for example, to the need to place the ballot in the secrecy envelope before placing it in the declaration envelope and executing the declaration. (*Id.*) I disagree.

By taking this position, the Majority seems to ignore the time and space constraints of the election process itself. As set forth above, county boards of elections must keep a record of receipt of every mail ballot under Section 1307-D(b) of the Election Code. This is because so much of what the General Assembly put into place in Act 77 springs from that event. A timely received mail ballot is a vote of the elector, even if it might ultimately be excluded from the certified election returns as part of the pre-canvass and canvass. Section 1306-D of the Election Code requires every district register to clearly identify electors who have received and voted their mail ballots so district election officers know that they are not eligible to vote at their polling placed on election day. Under the

Majority's interpretation of the word "complete" in Section 1306-D(c) of the Election Code, county boards of elections could never record receipt of a mail ballot until *after* election day and *after* the canvass of those ballots determines that the ballot is "complete." Consequently, the district registers at polling places on election day would never reflect whether county boards of elections received an elector's mail ballot, even if the county boards of elections actually did receive it. It follows, then, that, if the Majority view prevails on what the word "completed" means, no elector who votes by mail will ever be reflected in the district register as "having voted" until sometime after election day, meaning every elector who votes by mail can also vote provisionally under Section 1308-D(b)(2) of the Election Code without qualification. The Majority's interpretation of "completed ballot" guts the statutory qualifiers that limit who may, and may not, cast a provisional ballot at the polling place on election day. As we are required to interpret the laws of the General Assembly so as to avoid rendering any provision mere surplusage, the Majority's definition of "completed ballot" cannot withstand scrutiny. *See S & H Transp., Inc. v. City of York*, 140 A.3d 1, 7 (Pa. 2016) (observing that, in construing language of statute, court must give effect to every word and may not assume any words were intended as mere surplusage).

What information is within the ability of county boards of elections to determine at the time they receive a mail ballot from an elector?[12] Section 1308(a) of the Election Code provides the answer. There, the General Assembly instructs county boards of

---

[12] The Majority creates a new term—"Return Packet"—in order to bolster its position. (Maj. Op. at 2.) This term does not appear in the Election Code. Moreover, as noted above, county boards of elections must await the canvass to determine whether an elector has complied with all of the requirements for casting a mail ballot, particularly whether the elector who cast the ballot sealed it in a secrecy envelope. County boards of elections, therefore, can never ascertain whether they received a "Return Packet" prior to the canvass and the limitations imposed on election day voting for electors who requested and received mail ballots can never be implemented if the phrase "Return Packet" has the significance the Majority attributes to it.

elections to, "upon receipt of official absentee ballots in sealed official absentee ballot envelopes . . . and mail-in ballots as in sealed in official mail-in ballot envelopes, . . . safely keep the ballots in sealed or locked containers until they are to be canvassed." 25 P.S. § 3146.8(a). This section reflects what the county boards of elections must receive from an elector for the mail ballot to be included in the canvass. Generally speaking, it must be a mail ballot in the mandatory, sealed, outside declaration envelope. A mail ballot in a secrecy envelope is not "complete." A bare ballot is not "complete." It is undisputed that Electors' mail ballots were received by the Board in the required outside, sealed declaration envelopes. Accordingly, they were "complete" for purposes of proceeding to the canvass and, under the Election Code provisions set forth above, the Board was required to record their receipt at that time for purposes of creating accurate district registers.

It is also undisputed that Electors showed up at their respective polling places and cast provisional ballots for the Primary Election.[13] The crux of the dispute here is whether the Board was required to count Electors' provisional ballots under the aforementioned circumstances, particularly given Section 1210(a.4)(5)(ii)(F) of the Election Code's prohibition against counting an elector's provisional ballot where "the elector's [mail] ballot is timely received by a county board of elections." Appellants argue that the provision clearly and unambiguously prohibits a county board of elections from counting a "provisional ballot cast by a voter whose mail ballot the county board 'timely received' before the deadline of 8 [P.M.] on [e]lection [d]ay," irrespective of whether the timely received ballots are ultimately determined to be "valid" or "counted." (Appellants' Brief

_____

[13] For reasons set forth above, I believe it questionable, at least, as to whether Electors should have been permitted to cast provisional ballots, given that they had already "voted" their mail ballots. Regardless, they did, and my analysis depends on what the Board was authorized to do with those provisional ballots, not Electors' eligibility to vote them.

at 25.)  Appellees counter, and the Commonwealth Court agreed, that ambiguity in Section 1210(a.4)(5)(ii)(F) arises when it is read in the context of other provisions of the Election Code, namely, Section 1210(a.4)(5)(i) and Section 1306-D(b)(2), and that resolution of the ambiguity leads to the conclusion that Section 1210(a.4)(5)(ii)(F) prohibits the counting of an elector's provisional ballot only when the elector's timely received ballot is ultimately "valid" or "counted."  The Majority here takes a different path, reasoning, *inter alia*, that Section 1210(a.4)(5)(ii)(F)'s use of the term "ballot" refers only to a ballot that is not "void" because it was "naked"—*i.e.*, though sealed within the (exterior) declaration envelope, the ballot was not also sealed within the required (interior) secrecy envelope.  (Maj. Op. at 35-38.)  In the Majority's view, naked ballots are never received by county boards of elections under the Election Code.  In my respectful view, Appellees' position and the Majority's rationale are untenable.[14]

Beginning with Section 1210(a.4)(5)(i) of the Election Code, that provision again provides:

> *Except as provided in subclause (ii)*, if it is determined that the individual was registered and entitled to vote at the election district where the ballot

---

[14] The instant matter requires an "interpretation of the Election Code, which, as a question of law, is subject to a de novo standard of review and a plenary scope of review."  *Banfield v. Cortes*, 110 A.3d 155, 166 (Pa. 2015).  Moreover,

> [t]his Court's role in statutory interpretation is to ascertain and effectuate the intent of the Legislature, giving effect to all provisions of the statute under review, if possible.  The best indication of legislative intent is the plain language of the statute.  The plain language of each section of a statute must be read in conjunction with one another, construed with reference to the entire statute.  When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit.  Accordingly, only when the words of a statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through consideration of the various factors found in Section 1921(c) [of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(c)].

*Id.* at 166-67 (citations omitted).

was cast, the county board of elections shall compare the signature on the provisional ballot envelope with the signature on the elector's registration form and, if the signatures are determined to be genuine, shall count the ballot if the county board of elections confirms that the individual did not cast any other ballot, including an absentee ballot, in the election.

25 P.S. § 3050(a.4)(5)(ii)(F) (emphasis added).  Subclauses (i) and (ii) are not "flipsides." (Maj. Op. at 37.)  County boards of elections cannot choose one over the other as if they were a coin or the A and B sides of a vinyl record.  They most certainly are not on equal legal footing.  "Except as provided in subclause (ii)" takes primacy over what follows it in subclause (i).   A provisional ballot cannot be counted under subclause (i) if it is disqualified under subclause (ii).  When circumstances are presented that satisfy the introductory language of Section 1210(a.4)(5)(i) through application of the exception provided in subclauses (ii), any further analysis under the terms of subclause (i) is improper.  This is the only reasonable interpretation of Section 1210(a.4)(5).

Subclause (ii) of Section 1210(a.4)(5) of the Election Code begins, "[a] provisional ballot *shall not be counted if*."  25 P.S. § 3050(a.4)(5)(ii) (emphasis added).  What immediately follows is a list of circumstances that a county board of elections must consider before counting a particular provisional ballot.  If any of those circumstances apply, the directive to the county boards of elections is clear and mandatory—the provisional ballot must not be counted.  As noted above, the first five of those circumstances relate to defects in the casting of the provisional ballot itself—*i.e.*, the elector failed to sign the ballot envelope or there is an issue with the elector's signature. Exception (C) is particularly noteworthy.  Here, the General Assembly expressly stated that a provisional ballot shall not be counted if it "does not contain a secrecy envelope."[15] The next two exceptions relate to an elector's failure to appear before the county board

---

[15] Like mail ballots, provisional ballots, once cast by the elector, must be placed in an internal secrecy envelope and then placed in an outside provisional ballot envelope. Section 1210(a.4)(3) of the Election Code, 25 P.S. § 3050(a.4)(3).

of elections to verify the elector's identity through proof of identification or execution of an affidavit.

The Board rejected Electors' provisional ballots under exception (F) of Section 1210(a.4)(5)(ii) of the Election Code, which, as noted above, the General Assembly added to the list when it greatly expanded mail voting in Pennsylvania. That exception, unlike exception (C), makes no reference to a missing secrecy envelope. It makes no reference at all to the results of the canvass of mail ballots in Section 1308(g) of the Election Code. Instead, it simply and clearly provides that "[a] provisional ballot shall not be counted if . . . the elector's [mail] ballot *is timely received* by [the] county board of elections." 25 P.S. § 3050.(a.4)(5)(ii)(F) (emphasis added).

As noted above, Act 77 made numerous amendments to the Election Code when it expanded mail voting. Many of those reference the county boards of elections' receipt of an elector's mail ballot and the duties, obligations, and limitations that spring from the county boards of elections' receipt of the mail ballot.[16] At the same time the General Assembly added the language in those sections to the Election Code, it added this very exception. It follows, then, that the General Assembly, when referring to the timely receipt of mail ballots by the county boards of elections in Section 1210(a.4)(5)(ii)(F) of the Election Code, intended it to mean what it means everywhere else—*i.e.*, the county board of elections timely receives the elector's mail ballot when it receives, either in the mail or by hand-delivery, the ballot in the declaration envelope and sets it aside until the canvass. *See* 25 P.S. § 3146.8(a); *Bayview Loan Servicing, LLC v. Lindsay*, 185 A.3d 307, 313 (Pa. 2018) ("[S]tatutory interpretive principles also require that where the meaning of a

---

[16] *See supra* pp. 5-7 (discussing provisions of Election Code that reference or rely on ballot receipt).

word or phrase is clear when used in one section of a statute, it will be construed to have the same meaning in another section of the same statute.").

Rather than begin its analysis of Section 1210(a.4)(5)(i) of the Election Code with that provision's introductory clause and determining whether what follows in the provision applies at all in light of the exceptions set forth in Section 1210(a.4)(5)(ii), the Majority skips over the introductory clause and proceeds to interpret Section 1210(a.4)(5)(i)'s later requirement that a board of elections "confirm[] that the [elector] did not cast any other ballot."[17]  (Maj. Op. at 34-35.)  Aside from this misstep, the Majority proceeds to define the word "ballot" in both Section 1210(a.4)(5)(i) and Section 1210(a.4)(5)(ii)(F) differently than it can be defined in any other part of the Election Code—*i.e.*, as referring only to a ballot that is not "void."  The Majority then views the term "void" as meaning "of no legal effect," which the Majority extrapolates to mean that we treat a "void" ballot as if the county board of elections never received it at all.  (*Id.* at 35 (quoting *Void*, Black's Law Dictionary (12th ed. 2024).)

Preliminarily, neither the plain language of Section 1210(a.4)(5)(i) of the Election Code nor the plain language of Section 1210(a.4)(5)(ii) of the Election Code reference mail ballots that are not "void" or, conversely, mail ballots that are "valid."  To get to its desired result, the Majority imports the word "void" from Section 1308(g)(4)(ii) of the Election Code, which relates to the canvass procedure for mail ballots that survive the initial screening by the county boards of elections.  This provision expressly relates to secrecy envelopes that contain markings and provides:

> If any of the envelopes on which are printed, stamped or endorsed the words "Official Election Ballot" contain any text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the

---

[17] Appellees and the Commonwealth Court similarly give short shrift to the introductory language of Section 1210(a.4)(5)(i) of the Election Code.

elector's candidate preference, the envelopes and the ballots contained therein shall be set aside *and declared void.*

25 P.S. § 3146.8(g)(4)(ii) (emphasis added). Note that this provision does not expressly refer to *missing* secrecy envelopes—so called naked ballots. In *Boockvar*, this Court directly addressed the applicability and effect of this provision on naked ballots. Despite arguments that the above provision did not expressly refer to naked ballots and, thus, did not prohibit their inclusion in the count, this Court concluded that Section 1306-D(a) of the Election Code, 25 P.S. § 3150.16(a), which requires electors to seal their mail ballot in the secrecy envelope before placing it in the declaration envelope and delivering it to the county board of elections, when read *in pari materia* with Section 1308(g)(4)(ii) above, evidenced the General Assembly's intent "that a mail-in ballot that is not enclosed in the statutorily[ ]mandated secrecy envelope must be *disqualified.*" *Boockvar*, 238 A.3d at 380 (emphasis added). Importantly, the Court did not hold that Section 1308(g)(4)(ii) applied to naked ballots. Indeed, by its plain terms, it does not. That being said, the Court used the textually inapplicable provision to interpret the General Assembly's overarching intent with respect to the necessity of a secrecy envelope and concluded that, to the General Assembly at least, the secrecy envelope was so important that its absence meant the ballot must be "disqualified."

The Majority now holds that naked ballots are "void" under Section 1308(g)(4)(ii) of the Election Code, a decision that is in tension with this Court's decision in *Boockvar* and, if not, with the statutory language itself. That being said, unlike the Majority, I see no practical difference between the word "void," as used in Section 1308(g)(4)(ii), and "disqualified," as used by this Court in *Boockvar.* The effect is the same—the mail ballots (*i.e.*, the votes) cannot be included in the vote count. I disagree with the Majority ascribing any greater meaning to the word "void"—a meaning that would rewrite the history of the election. Not even the definition from Black's Law Dictionary of "void" offered by the

Majority, *see* Maj. Op. at 35, supports the Majority's position that somehow the effect of the ballot being void causes the ballot to essentially "disappear" as if it never existed. Miriam Webster's Dictionary defines "void" as "of no legal force or effect." *Void*, Webster's Third New International Dictionary 2562 (1993). That definition applies to all ballots that are excluded from the canvass, for whatever reason. That is clearly what this Court meant when it said in *Boockvar* that naked ballots are "disqualified." Any ballot excluded from the count through the statutory canvass procedure has been "disqualified" or "voided"— *i.e.*, no legal effect, it will not be included in the count—as those terms are generally understood. "Void" does not and cannot reasonably mean that the very same ballots that were excluded from the vote as a result of the canvass were: (a) never timely received by the county board of elections and placed in a sealed or locked container under Section 1308(a) of the Election Code; (b) never recorded as having been received, as required under Section 1307-D(b)(5) of the Election Code; (c) never subjected to the initial screening that determines whether the ballots would be subject to the next phase of the pre-canvass or canvass as required under Section 1308(g)(3); and, (d) in a twist of irony, never reviewed during the canvass under Section 1308(g)(4) to determine whether they should be counted.

The Majority highlights that Section 1210(a.4)(5)(ii)(F) of the Election Code clearly refers to a timely received "ballot," not a timely received "envelope." (Maj. Op. at 37.) The Majority adds that, given that other exceptions outlined in Section 1210(a.4)(5)(ii) refer to a "provisional ballot envelope," the General Assembly clearly knew how to distinguish between ballots and envelopes and would have provided for the invalidation of a provisional ballot based on the timely receipt of an elector's mail ballot "declaration envelope" if that was the General Assembly's intent. *See* 25 P.S. § 3050(a.4)(5)(ii)(A), (C) (providing that "[a] provisional ballot shall not be counted if[] . . . the provisional ballot

envelope . . . is not signed by the individual" or if "a provisional ballot envelope does not contain a secrecy envelope"). This line of reasoning also fails, as, for the reasons set forth above, it ignores all of the other places in the Election Code where the General Assembly refers to timely receipt of the ballot and chose to use that same phraseology in Section 1210(a.4)(5)(ii)(F). In addition, although the Majority notes, as discussed above, that the five exceptions listed in Section 1210(a.4)(5)(ii)(A)-(E) of the Election Code all focus on an elector's provisional ballot, the Majority fails to acknowledge that those exceptions were all enacted prior to Act 77. Act 77 added the final exception set forth in Section 1210(a.4)(5)(ii)(F), the only exception to focus on mail ballots *received* and not on the provisional ballots themselves.

Speaking of what the General Assembly could have written, the exception in Section 1210(a.4)(5)(ii)(C) provides that a provisional ballot shall not be counted if it "does not contain a secrecy envelope." The General Assembly's interpretation of new exception (F) likewise requires a determination regarding the presence or absence of a secrecy envelope. As construed by the Majority, exception (F) means "[a] provisional ballot shall not be counted if . . . the elector's [mail] ballot is timely received by [the] county board of elections" *and* if it is sealed in a secrecy envelope. If the secrecy envelope were the focus of the General Assembly in enacting exception (F), in all likelihood it would make it the focus as it did in exception (C). Instead, what the Majority does is ignore the words that the General Assembly actually used in exception (F), ignore how it used those same or similar words in other parts of the Election Code, and add words to exception (F) that the General Assembly used in other provisions that it could have used, but chose not to use, in exception (F).

To further illuminate the rationale behind my position, I offer the following final thoughts relative to the authority of both county boards of elections and this Court when

it comes to our respective roles of effectuating and interpreting the Election Code. The Election Code establishes county boards of elections and prescribes their powers and duties. *See* Section 301(a) of the Election Code, 25 P.S. 2641(a) (providing that "[t]here shall be a county board of elections in and for each county of this Commonwealth, which shall have jurisdiction over the conduct of primaries and elections in such county, in accordance with the provisions of the [Election Code]"); Section 302 of the Election Code, 25 P.S. § 2642 (providing that "[t]he county boards of elections, within their respective counties, shall exercise, in the manner provided by [the Election Code], all powers granted to them by this act, and shall perform all the duties imposed upon them by [the Election Code], which shall include" certain powers further enumerated in statute). "It is *a priori* that a governmental body such as an election board has only those powers expressly granted to it by the legislature." *Hempfield Sch. Dist. v. Election Bd. of Lancaster Cnty.*, 574 A.2d 1190, 1191 (Pa. Cmwlth.), *appeal denied*, 581 A.2d 575 (Pa. 1990). Relatedly, "[p]rescribed procedures in election matters are creatures of statute and, unless one can point to statutory authority for the course which he chooses to follow, his action is without legal warrant." *In re General Election Luzerne Cnty.*, 94 A.2d 565, 566 (Pa. 1953). Here, not only does the Board lack authority under the Election Code to count Electors' provisional ballots when the Board timely received their mail ballots, Section 1210(a.4)(5)(ii)(F) of the Election Code expressly prohibits the Board from doing so.

Additionally, "ballot and election laws have always been regarded as peculiarly within the province of the legislative branch of government." *Winston v. Moore*, 91 A. 520, 522 (Pa. 1914). In this regard, I am mindful that this Court is not at liberty to "ignore the clear mandates of the Election Code." *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*, 843 A.2d 1223, 1231 (Pa. 2004). We are also directed not only

to "listen attentively to what the statute says, but also to what it does not say." *In re Canvassing Observation*, 241 A.3d 339, 349 (Pa. 2020) (quoting *Discovery Charter Sch. v. Sch. Dist. of Phila.*, 166 A.3d 304, 321 (Pa. 2017)). Of course, we may "not insert words into [a statute] that are plainly not there." *Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, 52 A.3d 241, 245 (Pa. 2012); *see also Shafer Elec. & Constr. v. Mantia*, 96 A.3d 989, 994 (Pa. 2014) (providing that "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include" (quoting *Commonwealth v. Rieck Inv. Corp.*, 213 A.2d 277, 282 (Pa. 1965))). We likewise have "no authority to read ambiguity into plain language in order to effectuate what we discern to be the more favorable result." *Commonwealth ex rel. Kane v. Univ. of Pittsburgh Med. Ctr.*, 129 A.3d 441, 475 (Pa. 2015) (Baer, J., concurring and dissenting). And, "while we must consider the statutory language in its full context before we assess ambiguity, we must not overlabor to detect or manufacture ambiguity where the language reveals none." *Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1264 (Pa. 2020) (footnotes omitted). The Majority's reasoning, in my respectful view, does not hew closely to any of these principles.

The Election Code provisions at issue are clear, and they dictate that the Board shall not count an elector's provisional ballot if the elector's mail ballot is timely received by the Board. Again, the General Assembly very well could have authorized the Board to count electors' provisional ballots under circumstances where electors' mail ballots were timely received by the Board yet found fatally defective during the canvass and excluded from the count. The General Assembly, however, clearly did not, and this Court is not at liberty to make additions or modifications to the unambiguous statutory language in order to effectuate that result. To the extent that the General Assembly's chosen language represents bad policy, is unfair, or is inconsistent with the overarching intent of

the Election Code,[18] Appellees' complaints in this regard are better directed to that branch of government. *See Ursinus Coll. v. Prevailing Wage Appeals Bd.*, 310 A.3d 154, 173 (Pa. 2024) (explaining that "invocations of, and arguments about, public policy cannot override the plain language of" statutory provisions or "contravene the plain meaning of the[ir] term[s]," that this Court cannot "re-construe [statutory language] because we believe an alternative interpretation would address certain unintended consequences of the law," and that "[w]e leave the task of rectifying perceived deficiencies in the statutory scheme . . . to the legislature" (some alterations in original) (citations omitted)); *In re Canvass of Provisional Ballots in 2024 Primary Election*, __ A.3d __, (Pa., 55 MAP 2024, filed Sept. 13, 2024), slip op. at 11, (Wecht, J., concurring) ("The onus is upon the legislature to make policy judgments about what is necessary to ensure the integrity of

---

[18] Insofar as the Majority faults Appellants for failing to establish how their interpretation, with which I align, advances the purposes and goals of the Election Code, I emphasize that discussions of a statute's purposes and goals are not to be considered when the statute's language is clear. *See* 1 Pa. C.S. § 1921(c) (providing that, "[w]hen the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering," *inter alia*, "[t]he occasion and necessity for the statute," [t]he mischief to be remedied," and "[t]he object to be attained"). Likewise, to the extent that the Majority opines that Appellants' position and my conclusion lead to absurdity, I disagree. The conclusion is the result of a *policy choice* that the Majority views as absurd. *See Commonwealth v. Green*, 291 A.3d 317, 330 (Pa. 2023) (discussing absurdity doctrine). Arguably, providing one chance to cast a valid ballot, be it in person or by mail (elector's choice), is consistent with this Commonwealth's longstanding election policy and statutory framework. Electors bear the responsibility to follow the law, whether placing their ballot in a secrecy envelope or showing up to vote on election day between the hours of 7 A.M. and 8 P.M. As addressed by the General Assembly in the Election Code, provisional ballots are for those electors who face a different type of obstacle not of their own making—*e.g.*, where the elector attempts to vote in person but is not on the district registry or where there is a risk the elector's mail ballot may not arrive on time in the mail. This does not mean that other policy considerations could not, one day, result in a change in the manner in which invalid mail ballots are handled or expand the circumstances under which a provisional ballot may be counted. That, as I have consistently stated, however, is a matter for the General Assembly and not the judiciary.

our elections, and it is the duty of the judiciary to construe these mandates as the plain language directs.").

Finally, I do not herein address, or rely on, the particular process that the Secretary of the Commonwealth has established with respect to codes in the SURE system about ballots being cancelled prior to the canvass, (Notes of Testimony (N.T.), 5/7/2024, at 68), and SURE-generated email notices to electors, again prior to the canvass, that inform the electors that "[y]our ballot will not be counted"—a process that the Board followed here. Suffice it to say that I have serious questions about whether the codes and notices are authorized by the Election Code, consistent with the express secrecy provisions that the Election Code requires with respect to mail ballots up to and through the canvass, or are even true. (N.T., 5/7/2024, at 33-35.)

For all of the above reasons, and because the Board timely received Electors' mail ballots, the Board was compelled to refuse to count Electors' provisional ballots pursuant to Section 1210(a.4)(5)(ii)(F) of the Election Code. I would, therefore, reverse the Commonwealth Court's decision below.

Justices Wecht and Mundy join this dissenting opinion.